**Joany CHOU, Plaintiff–Appellant,**

v.

**The UNIVERSITY OF CHICAGO and Arch Development Corporation, Defendants–Appellees,**

**and**

**Bernard Roizman, Defendant–Appellee,**

**and**

**Aviron Company, Defendant–Appellee.**

No. 00–1317.

United States Court of Appeals, Federal Circuit.

July 3, 2001.

Paul K. Vickrey, Niro, Scavone, Haller & Niro, of Chicago, IL, argued for plaintiff-appellant. With him on the brief was Paul C. Gibbons.

Rebecca L. Weinstein, Bartlit Beck Herman Palenchar & Scott, of Chicago, IL, argued for defendants-appellees Arch Development Corporation and The University of Chicago. With her on the brief was Philip S. Beck.

Timothy J. Vezeau, Katten Muchin Zavis, of Chicago, IL, argued for defendant-appellee Dr. Bernard Roizman. With him on the brief was Jane J. Choi. Of counsel on the brief were David W. Clough and Paul B. Stephens, Marshall, O'Toole, Gerstein Murray & Borun, of Chicago, IL.

Richard de Bodo, Irell & Manella LLP, of Los Angeles, CA, argued for defendant-appellee Aviron Company. With him on the brief was Theodore H. Frank.

Before MAYER, Chief Judge, LOURIE and BRYSON, Circuit Judges.

LOURIE, Circuit Judge.

Joany Chou appeals from the decision of the United States District Court for the Northern District of Illinois granting Bernard Roizman and Aviron Company's motions to dismiss her claims for correction of inventorship, declaratory judgment of inventorship, fraud, breach of fiduciary duty, unjust enrichment, breach of express contract, and breach of implied contract. *Chou v. Univ. of Chicago*, No. 99–C4495, 2000 WL 222638, 2000 U.S. Dist. LEXIS 2002 (N.D.Ill. Feb.22, 2000) (*"Chou"*). Chou also seeks reinstatement of those' same claims against the University of Chicago ("University"). Because the district court erred in its determination that Chou did not have standing to sue for correction of inventorship under 35 U.S.C. § 256, we reverse its judgment as to that claim. We also reverse the court's dismissal of most of her state law claims against Roizman and direct the court to reinstate certain of her state law claims against the University. However, we affirm that court's dismissal of her breach of express contract claim against Roizman and of all her remaining claims against Aviron. We also affirm the court's grant of Roizman's motion to strike her allegations of academic theft and fraud. Finally, we reject Chou's attempt to have her case reassigned to another district court judge. We therefore affirm-in-part, reverse-in-part, and remand.

## BACKGROUND

Dr. Chou was a graduate student and subsequently a post-doctoral research assistant for Dr. Roizman at the University of Chicago's Department of Molecular Genetics and Cell Biology from 1983 to 1996. *Id.* at *1, 2000 U.S. Dist. LEXIS 2002, at *3. Roizman is named as the sole inventor on U.S. Patent 5,328,688 and a co-inventor

on U.S. Patents 5,795,713 and 5,922,328, all of which relate to herpes simplex virus and its use in an avirulent vaccine. *Id.* at *2, 2000 U.S. Dist. LEXIS 2002, at *5. Roizman is also listed as an inventor on three foreign applications: WO 9204050 (based on the subject matter of the '688 patent), WO 9833933 (based on the subject matter of the '713 patent), and PCT/US96/14292 (based on the subject matter of the '328 patent) (collectively, "the foreign applications"). The inventorship of those patents and applications is disputed.

Under University policy, inventors receive 25% of the gross royalties and up-front payments from licensing of the patents, as well as 25% of the stock of new companies that are based on their inventions. Chou allegedly told Roizman in February of 1991 that her discoveries should be patented, and he allegedly disagreed. *Id.* at *2–*3, 2000 U.S. Dist. LEXIS 2002, at *8–*9. At that time, however, Roizman had already filed the '688 patent application,[1] which was allegedly directed to the same disputed invention, and had named himself as the sole inventor of that subject matter. During prosecution of that application, the United States Patent and Trademark Office ("PTO") cited two joint Chou–Roizman publications as prior art. In response, Roizman submitted a declaration stating that those publications were not available as prior art because he was the sole inventor of the work described therein and that she merely worked under his direction and supervision. Paper No. 21 at 1.

On July 14, 1992, Roizman assigned the '688 patent application to Institut Merieux, a French company that had supported the research. *Id.* at *3, 2000 U.S. Dist. LEXIS 2002, at *10. Just before that assignment, however, on July 1, 1992, it appears

---

1. We refer to the patent application leading to the '688 patent as the '688 patent application in order to avoid using a separate application number and for ease of expression.

that Aviron had received an exclusive license to the herpes simplex virus technology from ARCH Development Corporation, a wholly owned affiliate of the University established to license and commercialize the University's technology and intellectual property. Institut Merieux later assigned the patent application to ARCH, which in turn licensed Aviron. *Id.* Aviron also obtained rights to the '713 and '328 patents and the foreign applications by license and assignment from ARCH. *Id.* at *1, 2000 U.S. Dist. LEXIS 2002, at *3. ARCH and Roizman each own Aviron stock and have received licensing revenue from NeuroVir, the sublicensee of Aviron's rights. *Id.* at *1, 2000 U.S. Dist. LEXIS 2002, at *3.

Later, in 1993, Roizman and Chou signed an agreement to share royalties from "the pending patent application to exploit the properties of the herpes simplex virus 34.5 gene." *Id.* at *3, 2000 U.S. Dist. LEXIS 2002, at *11. At the time the agreement was signed, Chou and Roizman were named inventors on a patent application relating to the subject matter of that agreement, which is not in dispute in this appeal. *Id.* at *4, 2000 U.S. Dist. LEXIS 2002, at *12. The '688 patent application was also pending when that agreement was signed, although Chou was not then aware of its existence. *Id.* In 1996, Roizman asked Chou to resign, failing which he told her that he would fire her, allegedly because she would be in a stronger position to contest his inventorship if she were still conducting research at the University. *Id.* at *1, 2000 U.S. Dist. LEXIS 2002, at *3.

In 1999, Chou sued Roizman, the University/ARCH, and Aviron (collectively, "the defendants") for correction of inventorship under 35 U.S.C. § 256, seeking to be named as the sole inventor on the '688 patent, or, in the alternative, as a co-inventor along with Roizman. She additionally sought to be listed as a co-inventor on the '713 and '328 patents. Chou also sued for a declaratory judgment that she was an inventor on the U.S. patents and their corresponding foreign applications. In addition, Chou asserted claims of fraudulent concealment, breach of fiduciary duty, unjust enrichment, breach of express and implied contract, and academic theft and fraud.

The district court determined that Chou lacked standing to seek correction of inventorship under § 256 because she could claim no ownership of the patents, having surrendered all her rights to the University under an employment agreement. *Id.* at *2, 2000 U.S. Dist. LEXIS 2002, at *6. The court also dismissed her claim for a declaratory judgment of inventorship, finding that she had no reasonable grounds to believe that Roizman intended to file suit to settle the inventorship question.

The district court also dismissed under Fed.R.Civ.P. 12(b)(6) all of her state law claims except her count for conversion. It determined that Roizman had no duty as Chou's advisor and department chairman to inform Chou of the status of the patent applications, and that his opinion that some of Chou's work should not be patented, although perhaps an affirmative misrepresentation, was not fraudulent. *Id.* at *3, 2000 U.S. Dist. LEXIS 2002, at *9–*10. The district court dismissed her unjust enrichment claim based on Roizman's alleged arrangement of the assignment of the '688 patent application to ARCH and then to Aviron, finding instead that Roizman assigned the application to Institut Merieux, which exercised its own "free will" to assign it to ARCH, which then licensed it to Aviron. *Id.* at *3, 2000 U.S. Dist. LEXIS 2002, at *10. The district court also dismissed her claim for breach of an express contract, finding that the contract signed by Chou and Roizman to

split royalties related to a different patent application on which both were listed as inventors and was therefore not relevant to the dispute. *Id.* at \*4, 2000 U.S. Dist. LEXIS 2002, at \*12. The court similarly dismissed her claim for breach of an implied contract because Chou did not allege that Roizman and Chou had established a practice of sharing royalties for all joint inventions. *Id.* at \*4, 2000 U.S. Dist. LEXIS 2002, at \*12–\*13. The court also granted Roizman's motion to strike Chou's allegations of academic theft and fraud under Fed.R.Civ.P. 12(f).

The court dismissed all claims against Aviron because Chou did not allege that Roizman's actions came within the scope of his authority as Aviron's agent, and because "so much of what Dr. Roizman did was done before there was an Aviron that Aviron authorized none of it; it simply benefited from the acts after it was brought into existence." *Id.* at \*5, 2000 U.S. Dist. LEXIS 2002, at \*16. The court dismissed all her counts against Roizman except the conversion count. *Id.* at \*3, 2000 U.S. Dist. LEXIS 2002, at \*10–\*11. Chou then voluntarily dismissed the conversion count and stipulated to the dismissal with prejudice of all counts of her complaint against the University/ARCH to obtain a final, appealable judgment because she agreed that the reasoning of the district court's order applied with equal force to the University/ARCH. *Chou v. Univ. of Chicago*, No. 99–C4495 (N.D.Ill. Mar.13, 2000) (stipulation of dismissal with prejudice of all claims except for Count V for conversion); *Chou v. Univ. of Chicago*, No. 99–C4495 (N.D.Ill. Apr.5, 2000) (voluntary dismissal of Count V). We have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1295(a)(1) (1994).

## DISCUSSION

 Whether a putative inventor who lacks a potential ownership interest in a patent has standing to sue is a question of law that we decide *de novo*. *See Prima Tek II L.L.C. v. A–Roo Co.*, 222 F.3d 1372, 1376, 55 USPQ2d 1742, 1745 (Fed.Cir. 2000) ("Whether a party has standing to sue is a question that this court reviews *de novo*."). We also review the grant of a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim *de novo. Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160, 26 USPQ2d 1038, 1041 (Fed.Cir. 1993). Dismissal is proper only if, after drawing all reasonable inferences in her favor, it is clear that the appellant can prove no set of facts consistent with her claim that would entitle her to relief. *Id.* We review the court's decision to strike material under Fed.R.Civ.P. 12(f) for abuse of discretion. *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664–665 (7th Cir.1992).

On appeal, Chou presents three reasons why the district court erred in its conclusion that she did not have standing to bring an action under § 256 to correct inventorship: (1) she did not assign her interest in her inventions to the University; (2) she would be entitled to receive 25% of the gross royalties and up-front payments from licensing, as well as 25% of the stock of new companies based on the invention, if she were a named inventor; or (3) she has standing solely by virtue of being a true inventor under our decision in *University of Colorado Foundation v. American Cyanamid Co.*, 196 F.3d 1366, 1374, 52 USPQ2d 1801, 1806–07 (Fed.Cir. 1999). Chou also argues that the court erred in dismissing her declaratory judgment claim because she had a reasonable apprehension that the defendants would file a § 256 action to seek reassurance of their position that Chou was correctly excluded as an inventor from the patents.

With respect to her state law claims, Chou contends that the district court erred

in dismissing her claim for fraudulent concealment because such a claim lies for fraudulent non-disclosure of a patent application under *University of Colorado*, 196 F.3d at 1371–72, 52 USPQ2d at 1804–05. She also contends that she adequately pleaded a claim for breach of fiduciary duty, which she argues is construed broadly under Illinois law. She further asserts that the court erred in dismissing her unjust enrichment claim because it did not consider her allegation that Roizman arranged the assignment of the application for the '688 patent from ARCH to Aviron even before he assigned it to Institut Merieux. She also argues that her breach of contract claim should not have been dismissed because she and Roizman expressly agreed to split any royalties resulting from the patents. Alternatively, she argues that she adequately stated a claim for breach of an implied contract because she pleaded that she and Roizman established a course of dealing to share royalties, and that Roizman unjustly retained the benefits of sole inventorship to her detriment. Finally, Chou argues that the court erred in striking her allegations of academic theft and fraud and requests that we remand the case to the Executive Committee of the United States District Court for the Northern District of Illinois for reassignment to a different judge.

The defendants respond that Chou lacks standing to sue for correction of inventorship under § 256 because she was obligated to assign her inventions to the University by virtue of accepting employment under the University's administrative policies. The University/ARCH also argues that it is not properly included as a defendant in her § 256 action because Chou stipulated that the district court's reasoning applied to the University/ARCH to the same extent that it applied to Roizman, and that Chou has no standing to sue Roizman under § 256 because she has no ownership interest in the patents at issue.

The defendants also contend that Chou lacks standing to sue for a declaratory judgment because she had no reasonable ground to believe that the defendants would file suit to correct inventorship under § 256.

With regard to Chou's state law claims, the defendants argue that the fraud count was properly dismissed because Roizman owed her no duty to disclose information about the filing of the patent applications, and that her breach of fiduciary duty claim is similarly deficient because the University does not impose a fiduciary duty upon its professors to disclose to their research assistants the filing of patent applications. The defendants also contend that Chou has no unjust enrichment claim because she assigned her rights to the University and has suffered no financial detriment as a result of Roizman's alleged actions. The defendants further argue that the district court did not err in dismissing her breach of contract claim because the agreement Chou relies upon for this claim refers only to an unrelated patent application upon which both Chou and Roizman were listed as joint inventors, and that her implied contract claim fails because Chou did not allege a course of dealing with Roizman to share royalties from all of the patent applications. Finally, the defendants assert that the court did not abuse its discretion in striking Chou's allegations of academic theft and fraud, and that the case should not be remanded to a different judge because Chou has not shown the threshold of bias or partiality in the trial judge that warrants such a reassignment.

A. *Standing to Sue for Correction of Inventorship under 35 U.S.C. § 256*

■ As a preliminary matter, we agree with the defendants that Chou was obligated to assign her inventions to the University. Although it is true that Chou never

signed a contract with the University specifically obligating her to assign her inventions to the University, she accepted her academic appointment subject to the administrative policies of the University. We are not persuaded by Chou's argument that the University's administrative policies do not include its patent statutes. The Faculty Handbook refers to the patent statutes as patent policies within a section entitled "Academic Policies." The University's Patent Statute section 20 provides as follows:

> Every patentable invention or discovery that results from research or other activities carried out at the University, or with the aid of its facilities or funds administered by it, shall be the property of the University, and shall be assigned, as determined by the University, to the University, to an organization sponsoring the activities, or to an outside organization deemed capable of administering patents.

It is true that the Faculty Handbook contains the following statement: "The contents of this handbook do not create a contract or agreement between an individual and the University." That statement, however, must be read in light of the statement immediately following it: "The basic terms and conditions of the employment agreement are set out in the letter of appointment received from the Provost's Office." Chou's letter of appointment stated that the appointment was subject to "the administrative policies of the University," which include the obligation to assign inventions to the University. Illinois law, which governs our determination of Chou's assignment obligations, thus obligated Chou to assign her inventions to the University even though she never specifically agreed to do so. *See Duldulao v. St. Mary of Nazareth Hosp. Ctr.,* 136 Ill. App.3d 763, 91 Ill.Dec. 470, 483 N.E.2d 956, 958 (1985) (holding that employee handbooks may impose enforceable obli-

gations on employers and employees even if the terms of the handbook are not bargained for). Chou accepted her appointment, thereby assuming the obligations set out in the University's policies. Moreover, she did not dispute her obligation when she assigned to the University other inventions for which she was a recognized inventor. We therefore conclude that if Chou is indeed an inventor of the contested subject matter, she would be obligated to assign those inventions to the University.

That conclusion, however, does not defeat Chou's standing to sue for correction of inventorship under § 256. Section 256 of title 35 provides a cause of action for judicial correction of inventorship:

> The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent *on notice and hearing of all parties concerned* and the Director shall issue a certificate accordingly.

35 U.S.C. § 256 (Supp. V 1999) (emphasis added); *MCV Inc. v. King–Seeley Thermos Co.,* 870 F.2d 1568, 1570, 10 USPQ2d 1287, 1289 (Fed.Cir.1989). The district court is indeed a court before which the matter was called into question, and notice and an opportunity for a hearing were provided. Chou, as a party "concerned," is clearly within the purview of the statute, but she must meet constitutional standing requirements in order to invoke it. That is, she must show that she has suffered an injury-in-fact, that the injury is traceable to the conduct complained of, and that the injury is redressable by a favorable decision. U.S. Const. art. III, § 2; *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

The district court determined that Chou did not have standing to sue for correction of inventorship on the basis of "[t]he principle that one who claims no ownership of the patent has no standing to seek relief under § 256." *Chou* at \*2, 2000 U.S. Dist. LEXIS 2002, at \*6 (citing *Kucharczyk v. Regents of the Univ. of Cal.*, 48 F.Supp.2d 964, 974–975 (N.D.Cal.1999)). The question whether a putative inventor who is obligated to assign her invention to another is entitled to sue for correction of inventorship under § 256 action is one of first impression for this court, notwithstanding the parties' arguments to the contrary. Chou argues that *University of Colorado* holds that a true inventor has the right to bring a § 256 action even absent an ownership interest. Although that case involved a § 256 action, we did not decide whether alleged inventors had an independent right to bring suit even though they had assigned their interest to the University. 196 F.3d at 1374–75, 52 USPQ2d at 1806–07.

Similarly, the cases cited by the defendants do not establish a rule of law that only a party with a potential ownership interest in a patent may sue under § 256. In *Fina*, we required a declaratory plaintiff to establish that it had a reasonable apprehension that another party with a right to bring an action under § 256 would do so, but we did not explain what circumstances would give a putative inventor lacking a potential ownership interest the right to bring such an action. *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1471, 43 USPQ2d 1935, 1939 (Fed.Cir.1997). In *Gaia Technologies., Inc. v. Reconversion Technologies, Inc.*, 93 F.3d 774, 777, 39 USPQ2d 1826, 1829 (Fed.Cir.1996), we required—as has always been required, *see Waterman v. Mackenzie*, 138 U.S. 252,

255, 11 S.Ct. 334, 34 L.Ed. 923 (1891)—joinder of the patent owner in an infringement suit where the licensee had not been assigned all substantial rights in the patent. Correction of inventorship was not at issue. *Id.*

The defendants argue that *Kucharczyk* supports their position. In that case, the district court held that plaintiffs relinquished their right to sue to correct inventorship to delete an inventor when they executed an assignment of their ownership interest. *Kucharczyk*, 48 F.Supp.2d at 974–975. An Ohio district court has taken a similar position. *See E.I. Du Pont de Nemours & Co. v. Okuley*, No. C2–97–1205, 2000 WL 1911430, at \*12 (S.D.Ohio Dec. 21, 2000) (stating that only an assignee has standing to challenge inventorship, citing *Kucharczyk* and *Chou*). We are not bound by the decisions of district courts; respectfully, we do not agree with them.

■ We conclude that an expectation of ownership of a patent is not a prerequisite for a putative inventor to possess standing to sue to correct inventorship under § 256.[2] The statute imposes no requirement of potential ownership in the patent on those seeking to invoke it. We have previously interpreted § 256 broadly as a "savings provision" to prevent patent rights from being extinguished simply because the inventors are not correctly listed. *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349, 47 USPQ2d 1657, 1662 (Fed.Cir. 1998). The same considerations apply here. Chou should have the right to assert her interest, both for her own benefit and in the public interest of assuring correct inventorship designations on patents. The interest of both inventors and the public are thus served by a broad interpretation of the statute.

---

**2.** One other means for a putative inventor to assert her inventorship right is for her to file her own patent application and seek to have the PTO declare an interference in order to establish inventorship. However, such a procedure is not at issue here.

Chou argues that a reputational interest alone is enough to satisfy the requirements of Article III standing. That assertion is not implausible. After all, being considered an inventor of important subject matter is a mark of success in one's field, comparable to being an author of an important scientific paper. Pecuniary consequences may well flow from being designated as an inventor. However, we need not decide that issue because Chou has alleged a concrete financial interest in the patent, albeit an interest less than ownership. Chou claims that the University is obligated to provide "[f]aculty, student and staff inventors ... 25% of the gross royalties and up-front payments from licensing activities." She also claims the right to receive rights to 25% of the stock of new companies based on their inventions. If Chou has indeed been deprived of an interest in proceeds from licensing the invention and in stock ownership by the conduct that she alleges, then she will have suffered an injury-in-fact, *i.e.*, the loss of those benefits. That loss would be directly traceable to Roizman's alleged conduct in naming himself as the sole inventor of discoveries that she at least partly made, and it would be redressable by an order from the district court to the Director of the PTO to issue a certificate naming Chou as an inventor, which would entitle her under the University's policy to a share of the licensing proceeds and stock already received by Roizman. We therefore determine that Chou is entitled to sue for correction of inventorship under § 256.

We next address the question of which defendants Chou may sue under § 256. The validity of a patent requires that the inventors be correctly named. *Pannu*, 155 F.3d at 1348–49, 47 USPQ2d at 1661. It follows that parties with an economic stake in a patent's validity are entitled to be heard on inventorship issues once a putative inventor has sued to correct inventorship. *See Fina*, 123 F.3d at 1471, 43 USPQ2d at 1939 (holding that a declaratory plaintiff may establish an actual controversy in an inventorship dispute by averring, *inter alia*, that it holds a "recognized interest" in a patent that could be adversely affected by a § 256 action). Moreover, we have cited with approval authority in which such parties have been subject to § 256 actions, even over their objection. *MCV*, 870 F.2d at 1570, 10 USPQ2d at 1289 ("The statute prescribes only one prerequisite to judicial action: all parties must be given notice and an opportunity to be heard. If that is done, there is subject matter jurisdiction in the district court over a dispute raising solely a joint inventorship issue among contending co-inventors.") (citing *Iowa State Univ. Found., Inc. v. Sperry Rand Corp.*, 444 F.2d 406, 410, 170 USPQ 374, 377 (4th Cir.1971)). We therefore conclude that parties with an economic stake in a patent's validity may be subject to a § 256 suit.

Each of the defendants in this case has an economic stake in the validity of the patents involved and hence in the correct inventorship designations on the patents. The University/ARCH owns the '688 and '713 patents and derives royalty income therefrom. Aviron owns the '328 patent and possesses exclusive licenses under the '688 and '713 patents; it derives royalties from its sublicense of those patents to NeuroVir. Roizman similarly receives a portion of the royalty income and stock benefits from those patents based on the University's policy to reward inventors. All of those benefits would be jeopardized by a determination that the patents are invalid for improper inventorship. Roizman's share of the profits would also be affected by joinder of Chou. Thus, each of the defendants has an economic stake in a correct inventorship designation on the

patents at issue and each may properly be named as a defendant in this § 256 action.

Aviron argues that it is not properly a defendant because it is not named as a defendant in Count I, which asserts Chou's § 256 claim. Although the district court stated that Aviron was not named as a defendant in Count I, *Chou* at *4, 2000 U.S. Dist. LEXIS 2002, at *14, we are unaware of the basis for that statement. Chou did not specifically name any defendant in her amended § 256 count. Rather, it appears that she asserted her § 256 claim against all of the defendants. On appeal, she requests that we remand her correction of inventorship claim to clearly include Aviron. As we have already concluded that Aviron is a proper defendant in Chou's § 256 action because it has an economic stake in the validity of the patents-in-suit, on remand the district court should grant Chou leave to amend the complaint, if necessary, to add Aviron as a defendant.

Furthermore, our conclusion that Roizman is a proper defendant in Chou's § 256 action also negates the University's argument that Chou cannot maintain her § 256 action against the University based on her stipulation that the district court's order applies with equal force and effect to the University and ARCH as it does to Roizman. Chou's § 256 claim against the University and ARCH should be reinstated.

Accordingly, we reverse the district court's conclusion that Chou has no standing to sue Roizman under 35 U.S.C. § 256, and instruct that court to reinstate her § 256 claim against the University and ARCH, and, if necessary, allow Chou leave to amend her § 256 claim to add Aviron as a defendant. The district court will determine whether Chou should be named as the sole inventor or a co-inventor on the '688 patent or a co-inventor on the '713 and '328 patents.

## B. *Declaratory Judgment to Correct Inventorship*

Chou also sought a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 that she is the sole inventor or, in the alternative, a joint inventor on the '688 patent and the WO '050 application, and that she is a joint inventor on the '713 and '328 patents, WO '933 application, and PCT '292 application. In view of our determination that Chou has standing to sue to correct inventorship of the U.S. patents under § 256, we need not determine if she is a proper declaratory plaintiff in an action to correct inventorship on those patents under the Declaratory Judgment Act; such a decision would not afford her any relief that is not also available through the § 256 action.

■■■ Chou claims entitlement to be named as an inventor on the foreign patent applications as well. Since inventorship on such applications normally follows the inventorship designation in the originating country, the district court, if it concludes on remand that Chou is properly an inventor of the disputed subject matter, can instruct the University to take appropriate action to change the inventorship designation on the foreign patent applications. *See, e.g.,* PCT Receiving Office Guidelines, PCT Gazette Ch. XVI, ¶¶ 309–311 (World Intellectual Property Organization Aug. 28, 1998) (setting forth the procedures for recording a change in the applicant or inventor of PCT applications).

## C. *State Law Claims*

### 1. Fraudulent Concealment

■■■ We agree with Chou that the district court erred in dismissing her complaint for failure to state a claim for fraudulent concealment of the '688 patent application. Fed.R.Civ.P. 9(b) requires that facts supporting a claim of fraud be pleaded with particularity. *Lachmund v.*

*ADM Investor Servs., Inc.,* 191 F.3d 777, 783 (7th Cir.1999). In Illinois, a plaintiff must allege that a defendant concealed a material fact when he was under a duty to disclose that fact to the plaintiff. *Connick v. Suzuki Motor Co.,* 174 Ill.2d 482, 221 Ill.Dec. 389, 675 N.E.2d 584, 593 (1997). The duty to disclose a material fact may arise if the plaintiff and defendant are in a fiduciary or confidential relationship, or if the plaintiff places trust and confidence in the defendant, thereby placing the defendant in a position of influence and superiority over the plaintiff. *Id.* That position of superiority may arise out of friendship, agency, or experience. *Id.*

▆▆▆ Chou alleged that Roizman had a responsibility under University policies and by virtue of their advisor-advisee relationship to not misappropriate her inventions. Chou has also alleged that Roizman specifically told her that he would take care to properly protect her research, inventions and co-inventions. The University's patent policy requires the University to endeavor to "provide a return to the inventor or creator." Similarly, under the policy, "[t]he inventor or creator and his or her Dean or other administrative head shall be consulted and kept informed of the [patenting] arrangements." The University's patent policy also requires that the disposition of patent rights be consistent with the requirements of law and professional ethics. As a member of the University's faculty, Roizman had a duty to abide by those policies, and Chou alleged that she trusted that he would do so. Thus, we conclude that Chou alleged with particularity that Roizman had a duty to disclose material facts relating to the patenting of her discoveries.

▆▆▆ With respect to his failure to disclose such facts, Chou alleged that she told Roizman in February 1991 that her discoveries should be patented, and that he disagreed with her but did not tell her that he

had already filed an application on those discoveries. Thus, Chou alleges all of the elements of a claim of fraudulent concealment by Roizman, *viz.,* that Roizman concealed the material fact of a patent application of which she may have been a true inventor when he was under a duty to disclose that fact because he held a position of superiority with respect to her and was obligated by University patent policies to give her proper inventorship credit.

In *University of Colorado,* we stated that a claim for fraudulent nondisclosure turned on the status of the unnamed inventors as true inventors. 196 F.3d at 1371–72, 52 USPQ2d at 1805 (applying Colorado law). Chou's claim for fraudulent concealment similarly depends on her status as a true inventor of the patents, a determination we have decided that the district court has jurisdiction to make. We therefore conclude that the district court erred in dismissing Chou's claim against Roizman for fraudulent concealment.

▆▆▆ Chou has also alleged that Roizman is an agent of the University/ARCH and Aviron, and that those entities are liable for his fraudulent nondisclosure under agency principles. We agree that Chou has adequately stated a claim that the University is liable under the doctrine of respondeat superior for Roizman's alleged concealment of his misappropriation of Chou's inventions. In Illinois, employers may be liable for the actions of their employees if they are within the scope of employment, *i.e.,* if those actions are the kind the employee was hired to perform, the actions occur substantially within the authorized time and space limits, and they are actuated, at least in part, by a purpose to serve the master. *Pyne v. Witmer,* 129 Ill.2d 351, 135 Ill.Dec. 557, 543 N.E.2d 1304, 1308 (1989). While university faculty are not agents of the university with respect to

the selection and conduct of their research projects, they may well be agents with respect to implementing policies of the university, including ownership of inventions and compensation therefor. The University's Faculty Handbook recognizes such an agency with respect to its patent policies, stating that "[t]he University, acting directly or through its designee, shall endeavor to license or assign such products in such a manner as to assure the greatest benefits to the University and the public, and provide a return to the inventor or creator." Roizman allegedly named himself as the sole inventor of Chou's discoveries and applied for a patent on those discoveries under the auspices of his authority as a department chairman of the University to recommend and direct patent prosecution on inventions made in his research lab. We therefore conclude that Chou has adequately stated a claim for fraudulent nondisclosure by the University/ARCH under principles of respondeat superior.

▆▆▆ We do not agree, however, that Chou's allegations concerning Aviron's liability under agency principles for Roizman's alleged fraudulent nondisclosure meet the requirement of Fed.R.Civ.P. 9(b) to plead fraud with particularity. Those allegations of Roizman's being an agent of Aviron are based on his status as an Aviron director, co-founder, and scientific advisory board member. She does not allege that his acts of misappropriating her inventions were within the scope of his authority conferred by those positions. Chou alleged that Roizman had a duty to disclose the patenting of her discoveries based upon Roizman's relationship to her as a University professor and laboratory advisor, not his relationship to her as a corporate director of Aviron. Moreover, Aviron was founded in 1992, after Roizman claimed inventorship credit for the '688 patent application. We therefore conclude that the court did not err in dismissing

Chou's claim for fraudulent nondisclosure against Aviron.

### 2. Breach of Fiduciary Duty

▆▆▆ We also agree with Chou that the district court erred in dismissing her claim against Roizman for breach of fiduciary duty. A fiduciary duty in Illinois may arise in one of two ways. A fiduciary relationship automatically arises from particular relationships, such as attorney-client and principal-agent, as a matter of law. *Ransom v. A.B. Dick Co.*, 289 Ill. App.3d 663, 224 Ill.Dec. 753, 682 N.E.2d 314, 321 (1997). A fiduciary relationship may also arise from the special circumstances of the parties' relationship, such as when one party justifiably places trust in another so that the latter gains superiority and influence over the former. *Id.* The relevant factors in determining whether the latter fiduciary relationship exists include the disparity in age, education, and business experience between the parties, and the extent to which the "servient" party entrusted the handling of its affairs to the "dominant" party and placed its trust and confidence in that party. *Id.* The existence of a fiduciary relationship prohibits the dominant party with the duty from seeking or obtaining any selfish benefit for himself at the expense of the servient party while the fiduciary duty exists. *McCartney v. McCartney*, 8 Ill.2d 494, 134 N.E.2d 789, 792 (1956); *Steinmetz v. Kern*, 375 Ill. 616, 32 N.E.2d 151, 154 (1941).

▆▆▆ Chou alleged that Roizman held a position of superiority over her as her department chairman, and that he had specifically represented to her that he would protect and give her proper credit for her research and inventions. Given the disparity of their experience and roles, and Roizman's responsibility to make patenting decisions regarding Chou's inventions, Chou has adequately pleaded the existence of circumstances that place on

Roizman a fiduciary duty with respect to her inventions. Furthermore, Chou pleaded that Roizman breached that duty by naming himself as an inventor of her discoveries. Resolving all inferences in favor of Chou, as we must at this stage of the proceedings, we conclude that she has sufficiently stated a claim of breach of fiduciary duty and that the district court erred in dismissing that claim.

Chou alleges a breach of fiduciary duty with respect to the foreign applications. Since, as we have indicated, the inventorship of the foreign applications is in effect determined by the inventorship of the U.S. patents, we need not dwell on that claim.

We also agree with Chou that she has stated a claim against the University for breach of fiduciary duty under the theory of respondeat superior for the same reasons as for her fraudulent concealment claim. The district court did not err, however, in dismissing Chou's claim for breach of fiduciary duty against Aviron because Chou did not adequately allege its liability under agency principles.

### 3. Unjust Enrichment

█ We also agree with Chou that the district court erred in dismissing her claim for unjust enrichment.[3] To state a cause of action based on a theory of unjust enrichment under Illinois law, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that the defendant's retention of that benefit violates fundamental principles of justice, equity, and good conscience. *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 137 Ill.Dec. 19, 545 N.E.2d 672, 679 (1989).

█ Chou has alleged that Roizman arranged a license of the '688 patent application from ARCH to Aviron on July 1, 1992, before he assigned his rights in the invention to Institut Merieux on July 14, 1992. The district court did not address this allegation. However, whatever the arrangements concerning the assignment and ownership of the patents, those decisions belonged to the University, and Roizman was acting as the University's agent when he arranged the business transactions. Chou's interest was in the financial consequences of those decisions. Roizman's possible unjust enrichment occurred not in his involvement in the business arrangements, but to the extent that he received royalties and stock that might properly have been Chou's.

Chou has alleged that Roizman's retention of those benefits is unjust, both under University policy and equity principles. If Chou is correct that she invented the subject matter of the patents, then under University policy she should have shared (if a co-inventor) or received entirely (if the sole inventor) 25% of the gross royalties and up-front payments from licensing activities that Roizman received from the University, as well as 25% of the stock of new companies based on the patents. Moreover, if Chou is correct that Roizman wrongfully usurped her proper inventorship status, equity dictates that he should not benefit from that transgression at her expense. The district court therefore erred in dismissing her claim against Roizman for unjust enrichment.

█ We conclude, however, that Chou failed to state a claim for unjust enrichment against the University and Aviron. Chou alleged that the University and Aviron enriched themselves from Chou's research. Because we have decided that Chou was obligated to assign her inven-

---

**3.** Chou alleges unjust enrichment with regard to both the U.S. patents and the foreign applications. Our resolution of the inventorship of foreign applications in addressing her breach of fiduciary duty claim applies equally to her claim for unjust enrichment.

tions to the University, both the University and Aviron would have had the same rights to the inventions and thus the same enrichment from them even if Chou had been named as an inventor. The district court did not err, therefore, in dismissing her claim for unjust enrichment against Aviron, and Chou is not entitled to have the district court reinstate that claim against the University.

### 4. Breach of Express Contract

■ We agree with Roizman that Chou has not sufficiently alleged an alternative claim against him for breach of an express contract. The basis for her claim against him is a written agreement dated June 14, 1993, in which they agreed to equally split "the royalties resulting from the pending patent application." As the district court found, however, and as Chou does not dispute, that letter referred to a different application on which both Chou and Roizman were listed as named inventors. Chou could not have expressly agreed to split the royalties resulting from the '688 patent application, which she did not know existed at the time. There was no meeting of the minds as to that application. Chou did not sufficiently plead a claim of breach of an express contract by Roizman.

■ We agree with Chou, however, that she has sufficiently stated a claim against the University for breach of express contract.[4] Chou has alleged that counsel for the University and Roizman reviewed her laboratory notebooks on April 20, 1999 and informed her counsel on May 13, 1999 that the University had decided that Chou was an inventor of the subject matter disclosed and claimed in the '688 patent and that paperwork would be sent to Chou to correct inventorship, but that such paperwork was never sent. Moreover, the University represents that its practice is to reward inventors with 25% of the gross royalties, as well as 25% of the stock of new companies based on their inventions. When asked at oral argument what claim Chou could have brought, assuming all that she alleged is true, University counsel suggested that her appropriate cause of action would have been for breach of contract against the University.[5]

Chou has thus alleged that the University recognized her as an inventor but did not compensate her according to its policy.[6] We therefore conclude that her breach of express contract claim against the University should be reinstated.[7]

---

4. Chou alleges breach of express contract with regard to both the U.S. patents and the foreign applications. Our resolution of the inventorship of foreign applications in addressing her breach of fiduciary duty claim applies equally to her claim for breach of express contract.

5. University counsel, however, maintained that such a contract claim would have required resolution of the inventorship issue, which it argued was not available to Chou under § 256 for lack of standing.

6. While the University's policy appears to be contained in a report of a committee of ARCH, the University's licensing arm, and it speaks of a "practice" that inventors "should continue . . . to receive" compensation, the University does not question the existence or enforceability of such a policy. Thus, her claim is sufficient to meet the minimal requirements to state a claim under Fed. R.Civ.P. 8(a).

7. Although Chou stipulated that the reasoning of the district court's order dismissing all of the claims against Roizman also applied to the University and ARCH, that stipulation does not preclude reinstatement of her breach of express contract claim against the University even though we have determined that she did not adequately state such a claim against Roizman. Her contract claim depends on her status as an inventor, a determination that was precluded under the district court's reasoning but that we have decided she is entitled to under § 256.

### 5. Breach of Implied Contract

We also agree with Chou that the district court erred in dismissing Chou's claim for breach of an implied contract.[8] Although Chou does not distinguish between implied-in-fact and implied-in-law contracts in her complaint, her allegations involve both types of implied contracts and we evaluate them separately.

#### a. Implied-in-fact Contract

Under Illinois law, a contract implied-in-fact, like an express contract, arises from acts or circumstances indicating the parties' mutual intention. *Chudnovski v. Eckels*, 232 Ill. 312, 83 N.E. 846, 848 (1908); *Brody v. Finch Univ. of Health Scis.*, 298 Ill.App.3d 146, 232 Ill. Dec. 419, 698 N.E.2d 257, 265 (1998). It generally arises from an established course of dealing between parties. *Id.* The district court found that Chou did not allege a relevant course of dealing between herself and Roizman sufficient to allow an inference that they would share royalties resulting from their joint inventions and dismissed the claim. *Chou* at *4, 2000 U.S. Dist. LEXIS 2002, at *12–*13. We agree with that decision. Although Chou did allege a course of dealing with Roizman to split the benefits of their joint inventions, Chou and Roizman in fact expressly agreed in writing to share the royalties on another invention not on appeal. An express writing with respect to one invention undercuts her claim that there was an established course of dealing regarding all their joint inventions. We therefore affirm the court's dismissal of Chou's implied-in-fact contract claim against Roizman.

Nor did Chou adequately allege breach of such a contract by the University. The course of dealing she alleges with the University appears to be the University's express policy to reward its inventors with a portion of the licensing and stock proceeds of their inventions. Under Illinois law, courts do not imply contracts when express agreements govern parties. *Stone v. City of Arcola,* 181 Ill. App.3d 513, 130 Ill.Dec. 118, 536 N.E.2d 1329, 1339 (1989). We therefore conclude that Chou has not adequately stated claims against the University for breach of an implied-in-fact contract.

#### b. Implied-in-law Contract

Our decision that Chou did not adequately plead breach of an implied-in-fact contract does not defeat her claim for breach of implied contract if she adequately pleaded breach of an implied-in-law contract. A contract implied-in-law (quasi-contract) results, regardless of the parties' intentions, from a duty imposed by law and is a contract only in the sense that it is created and governed by equity principles. *Chudnovski*, 83 N.E. at 848; *Brody*, 232 Ill.Dec. 419, 698 N.E.2d at 265. Such a claim is related to unjust enrichment. The district court dismissed this theory solely on the basis that she did not adequately plead unjust enrichment. *Chou* at *4, 2000 U.S. Dist. LEXIS 2002, at *13. As we have already decided that Chou adequately pleaded unjust enrichment by Roizman, she may also pursue against him the related theory of breach of an implied agreement. However, Chou would be well advised on remand to avoid redundant claims. Our determination that she has adequately stated claims based on these theories does not entitle her to recover separate damages for each of these claims if she were to prevail at trial; we merely

---

**8.** Chou alleges breach of implied contract with regard to both the U.S. patents and the foreign applications. Our resolution of the inventorship of foreign applications in addressing her breach of fiduciary duty claim applies equally to her claim for breach of implied contract.

decide that she has sufficiently stated claims based on these theories. Chou, however, did not adequately plead unjust enrichment by the University, and therefore her claim against it for breach of an implied-in-law agreement similarly fails.

### D. Miscellaneous

#### 1. Academic Theft and Fraud

■ The district court struck Chou's allegations of academic theft and fraud under Fed.R.Civ.P. 12(f). We conclude that the court did not abuse its discretion in striking those allegations from the complaint because they are redundant and immaterial to her complaint. Rule 12(f) allows the court to strike "from any pleading any . . . redundant, immaterial, impertinent, or scandalous matter." Chou's recourse for violation of the University's academic fraud policy is in the first instance through the University's systems of governance, not through litigation. If her allegations are true, Chou may obtain relief through her other state law claims. We therefore affirm the court's decision to strike these allegations under Rule 12(f).

#### 2. Case Reassignment

■ We decline to remand this case to the Executive Committee for the United States District Court for the Northern District of Illinois pursuant to its Local Rule 40.5 for reassignment to a different judge. Chou has not shown that the district court judge displayed "deep-seated favoritism or antagonism" that would make fair judgment impossible. *Liteky v. United States*, 510 U.S. 540, 554–556, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). Chou made an excessive number of overlapping federal and state claims. Her amended complaint alone consists of fifty-six pages, two hundred and nineteen separately enumerated paragraphs, and nineteen different prayers for relief. Sorting out the issues has been no easy task. In the absence of governing law, the district court conscientiously relied on a district court decision. We are reversing in part only because we evaluate the federal inventorship statute and the state law issues concerning the relationship between a professor and his assistant regarding patents differently, not because the district court exhibited "favoritism or antagonism."

### CONCLUSION

Because the district court erred in holding that Chou did not have standing to sue for correction of inventorship under § 256, we reverse and remand for adjudication of that claim against all of the defendants. We also reverse the court's determination that Chou failed to state claims for fraudulent concealment, breach of fiduciary duty, unjust enrichment, and breach of implied contract against Roizman, and we direct the court to reinstate Chou's claims for fraudulent concealment, breach of fiduciary duty, and breach of an express contract against the University/ARCH. We affirm, however, its decision dismissing all other claims against Aviron, and its decision to strike Chou's allegations of academic theft and fraud pursuant to Fed.R.Civ.P. 12(f). We do not address the court's dismissal of her declaratory judgment claim for correction of inventorship because that issue is moot. Finally, we decline to remand the case to the Executive Committee for reassignment to a different judge. Accordingly, we

*AFFIRM–IN–PART, REVERSE–IN–PART,* and *REMAND.*