# United States Court of Appeals for the Federal Circuit

---

**TRIREME MEDICAL, LLC,**
*Plaintiff-Appellant*

**v.**

**ANGIOSCORE, INC.,**
*Defendant-Appellee*

---

2015-1504

---

Appeal from the United States District Court for the Northern District of California in No. 3:14-cv-02946-LB, Magistrate Judge Laurel Beeler.

---

Decided: February 5, 2016

---

DAVID A. CAINE, Arnold & Porter, LLP, Palo Alto, CA, argued for plaintiff-appellant. Also represented by THOMAS T. CARMACK, MICHAEL DUY KHIEM NGUYEN, JAMES C. OTTESON.

PETER J. ARMENIO, Quinn Emanuel Urquhart & Sullivan, LLP, New York, NY, argued for defendant-appellee. Also represented by WILLIAM ADAMS, MATTHEW ROBSON, CLELAND B. WELTON, II; AARON BERGSTROM, San Francisco, CA.

---

Before PROST, *Chief Judge,* DYK, and CHEN, *Circuit Judges.*

DYK, *Circuit Judge.*

AngioScore, Inc. ("AngioScore") claims exclusive ownership of U.S. Patent Nos. 8,080,026 ("the '026 patent"), 8,454,636 ("the '636 patent"), and 8,721,667 ("the '667 patent") (collectively, "the AngioScore patents"). TriReme Medical, LLC ("TriReme"), claiming to have received an assignment of an interest in the AngioScore patents from Dr. Chaim Lotan, brought suit for correction of inventorship. It sought to have Dr. Lotan named as an inventor on the patents pursuant to 35 U.S.C. § 256. The district court dismissed for lack of subject matter jurisdiction, holding that any interest Dr. Lotan may have had in the AngioScore patents had been assigned earlier to AngioScore under a consulting agreement, and that TriReme as a consequence lacked standing. TriReme appeals. We reverse and remand for further proceedings.

## BACKGROUND

AngioScore sells a line of angioplasty balloon catheters called AngioSculpt, which are designed to open arterial blockages. To accomplish this, an AngioSculpt device is inserted into a blood vessel and inflated when it reaches the targeted occlusion area. The balloon contains a metal spiral on its surface, which expands as the balloon inflates and scores the plaque lining the occluded blood vessel. The balloon is then deflated and the device removed from the vessel. All three AngioScore patents relate to this concept. Each lists three inventors: Dr. Eitan Konstantino, Tanhum Feld, and Nimrod Tzori. None lists Dr. Chaim Lotan as an inventor.

TriReme is a competitor of AngioScore.  Apparently concerned that AngioScore might charge TriReme with infringement of the '026, '636, and '667 patents, TriReme sought to acquire an interest in the AngioScore patents from Dr. Lotan, who performed consulting services for AngioScore.  In June 2014, Dr. Lotan granted TriReme an exclusive license to "any and all legal and equitable rights" he held in the AngioScore patents.  J.A. 317.  Dr. Lotan testified that he retained no financial interest in the patents.  If Dr. Lotan was an inventor of the patents and TriReme acquired his interest, TriReme could practice the patents and would have a defense to infringement.  *See* 35 U.S.C. § 262; *Shum v. Intel Corp.*, 629 F.3d 1360, 1369 (Fed. Cir. 2010).

Dr. Lotan claims that his inventive contribution arose from his work in connection with the development of the AngioSculpt catheters in 2003, which is reflected in the AngioScore patents.  AngioScore's defense to this claim is based on a contract entitled "AngioScore, Inc. Consulting Agreement" ("Consulting Agreement") between AngioScore and Dr. Lotan, with an effective date of May 1, 2003.  J.A. 309.  AngioScore asserts that it had acquired rights to all inventive work completed by Dr. Lotan under both § 9(a) and § 9(b) of the Consulting Agreement.

TriReme brought suit for correction of inventorship pursuant to 35 U.S.C. § 256, seeking to have Dr. Lotan named as an inventor of the AngioScore patents.  AngioScore moved to dismiss for lack of subject matter jurisdiction, arguing that TriReme lacked standing because Dr. Lotan had assigned any rights he may have had in his inventive contribution to the patents to AngioScore under the Consulting Agreement, and that, accordingly, Dr. Lotan had nothing to later license to TriReme.  The district court granted AngioScore's motion and dismissed the complaint.  *See TriReme Med., LLC v. AngioScore, Inc.*, No. 14-cv-02946-LB, 2015 WL 1246532 (N.D. Cal.

Mar. 17, 2015). It held that the "question of when Dr. Lotan completed work is ultimately immaterial," interpreting the Consulting Agreement to provide for assignment of Dr. Lotan's interest to AngioScore regardless of the date of his work. J.A. 8. TriReme appealed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1). Standing in an inventorship dispute is a question of law that we review de novo. *Chou v. Univ. of Chicago*, 254 F.3d 1347, 1355 (Fed. Cir. 2001). We also review the interpretation of a contract de novo. *Intel Corp. v. ULSI Sys. Tech., Inc.*, 995 F.2d 1566, 1569 (Fed. Cir. 1993).

## DISCUSSION

When the owner of a patent assigns away all rights to the patent, neither he nor his later assignee has a "concrete financial interest in the patent" that would support standing in a correction of inventorship action. *Chou*, 254 F.3d at 1359; *see also Larson v. Correct Craft, Inc.*, 569 F.3d 1319, 1326–27 (Fed. Cir. 2009). The question is whether such an assignment to AngioScore occurred here.

Necessary to understanding this dispute is a description of the Consulting Agreement. The Consulting Agreement contains two provisions material to this appeal: § 9(a), which relates to Dr. Lotan's work before the May 1, 2003, effective date; and § 9(b), which relates to Dr. Lotan's work after the effective date. The Consulting Agreement provides:

9. <u>Inventions</u>

(a) <u>Inventions Retained and Licensed</u>. Consultant has attached hereto, as part of <u>Exhibit C</u>, a list describing all inventions, original works of authorship, developments, improvements, and trade secrets which were made by Consultant prior to the date of this Agreement (collectively referred to as "<u>Prior Inventions</u>"), that belong solely to Con-

sultant or belong to Consultant jointly with another <u>and</u> that relate to any of the Company's current or proposed businesses, products or research and development; or if no such list is attached, Consultant represents that there are no such Prior Inventions.  If, in the course of providing the Services, Consultant incorporates into a Company product, process or machine or into any Invention (as defined below), a Prior Invention owned by Consultant or in which Consultant has an interest, the Company is hereby granted and shall have a non-exclusive license (with the right to sublicense) to make, have made, copy, modify, make derivative works of, use, sell and otherwise distribute such Prior Inventions as part of or in connection with such product, process, machine or Invention.

(b) <u>Assignment of Inventions</u>.  Consultant agrees to promptly disclose to the Company and hereby assigns to the Company, or its designee, all right, title and interest in and to all <u>inventions</u>, original works of authorship, <u>developments</u>, concepts, know-how, <u>improvements</u> or trade secrets, whether or not patentable, that Consultant may solely or jointly <u>conceive or develop or reduce to practice during the term of this Agreement</u> that relate to the Services (collectively referred to as "<u>Inventions</u>").

J.A. 310 (underlining in § 9(b) other than final "Inventions" added).

AngioScore's theory under § 9(a) is that § 9(a) required Dr. Lotan to attach a list of any "Prior Inventions" made before May 1, 2003, in Exhibit C of the Consulting Agreement.  *Id.*  He did not list any such inventions in Exhibit C.  The Consulting Agreement provides that

failure to attach a list amounts to a representation that there are "no such Prior Inventions." *Id.* The result, AngioScore contends, is that such unlisted inventions belong to AngioScore.

AngioScore's theory under § 9(b) is that § 9(b) governs all inventions, developments, concepts, and improvements relating to Dr. Lotan's work for AngioScore that Dr. Lotan conceived, developed, or reduced to practice after the effective date, and provides that AngioScore shall be assigned all such inventions. AngioScore contends that it was assigned all of Dr. Lotan's rights to his inventive contribution because his work relating to that contribution continued after May 1, 2003.

We first consider AngioScore's claim under § 9(a) of the Consulting Agreement. Before the May 1, 2003, effective date, Dr. Lotan performed a single-day study testing AngioSculpt prototypes in pig arteries. During the study, Dr. Lotan discovered a "clear retention problem" in which the metal spiral on the surface of the balloon dislodged from the device upon retraction from the pigs' arteries. J.A. 418. Dr. Lotan suspected that the problem arose because the spiral was only affixed to the balloon at one end—the other end was "free-floating" to enable the spiral to move in response to the balloon's expansion and contraction. J.A. 512. After observing this problem, Dr. Lotan contributed to a memorandum summarizing the study, which highlighted the retraction issue and recommended that the unattached end be better secured. According to Dr. Lotan, during two follow-up meetings with AngioScore he further recommended that the unattached end be affixed to the balloon with a polymer tube, which he believed would more securely bond the spiral to the balloon while still allowing the spiral to expand and contract synchronously with the balloon. The later issued AngioScore patents claim a balloon catheter with an attachment structure similar to that allegedly recom-

mended by Dr. Lotan. According to Dr. Lotan, it was not until 2013 that he learned that the AngioScore patents had incorporated his alleged recommendation. Dr. Lotan testified that he did not list his work on the pig study under Exhibit C of the Consulting Agreement because he did not consider it an invention at the time.

AngioScore argued before the district court that it had acquired all of Dr. Lotan's interest in the pre-May 1, 2003, work under § 9(a) of the Consulting Agreement. AngioScore contended that Dr. Lotan's work on the pig study qualified under the terms of the Consulting Agreement as an "invention," "development," or "improvement" that related to AngioScore's business and was made by Dr. Lotan "prior to the date of [the] Agreement." J.A. 310. Thus, AngioScore argued, Dr. Lotan was required to list the pig study under Exhibit C of the Consulting Agreement pursuant to § 9(a), and his failure to do so resulted in an assignment—not simply a license—of his rights to AngioScore. The district court agreed, reasoning based on the "purpose" of the Consulting Agreement that § 9(a) "together" with § 9(b) operated to assign Dr. Lotan's rights in his inventive contribution to AngioScore as a consequence of his failure to list the pig study. J.A. 13.

Contrary to the district court's conclusion, § 9(a) does not provide for assignment of Dr. Lotan's rights. California law, which governs the interpretation of this contract, requires that we construe the Consulting Agreement according to the plain meaning of the language employed if possible. *See* Cal. Civ. Code § 1639; *Cedars-Sinai Med. Ctr. v. Shewry*, 137 Cal. App. 4th 964, 979–80 (2006). Section 9(a) is entitled "Inventions Retained and Licensed," but nothing in its terms suggests that anything not listed as a "Prior Invention" would not be "retained." J.A. 310. And it certainly does not provide that inventions that are not listed are assigned, rather than licensed. Indeed, granting an assignment for any "Prior

Invention" would make little sense, because listed inventions under § 9(a) could theoretically encompass independent inventions dating back many years before the start of the Consulting Agreement.

What § 9(a) does, at most, is grant AngioScore a non-exclusive license in the event that the consultant incorporates a Prior Invention into an AngioScore product during the term of the Consulting Agreement. But such license is not exclusive and would not prevent Dr. Lotan from subsequently assigning his rights in those contributions to TriReme. In short, the district court erred to the extent it relied on § 9(a) to find that Dr. Lotan assigned his rights to AngioScore.

AngioScore argues, however, that estoppel by contract—codified by § 622 of the California Evidence Code—binds TriReme, as Dr. Lotan's successor in interest, to Dr. Lotan's representation under § 9(a) that he had no "Prior Inventions" relevant to AngioSculpt and therefore "owned no rights in any purported 'development' or 'improvement' of AngioScore's prototype." Appellee's Br. 28. This representation, AngioScore argues, precludes TriReme from now alleging that Dr. Lotan made an inventive contribution on which TriReme could base an inventorship claim. This new argument is unavailing. Estoppel by contract does not apply here, because neither Dr. Lotan nor his successor in interest (TriReme) seeks to enforce any rights under the contract. *See Gas Appliance Sales Co. v. W.B. Bastian Mfg. Co.*, 262 P. 452, 455 (Cal. Dist. Ct. App. 1927); *see also Bank of Am. v. Banks*, 101 U.S. 240, 247 (1879); *Popplewell v. Stevenson*, 176 F.2d 362, 364 (10th Cir. 1949). AngioScore has cited no case that applies estoppel by contract where the cause of action is not founded upon the written instrument itself. Accordingly, estoppel by contract does not bind TriReme in its correction of inventorship action here.

We next consider AngioScore's alternative argument that Dr. Lotan assigned it all rights in his inventive contribution pursuant to § 9(b). The parties dispute the significance of Dr. Lotan's role in the development of AngioSculpt after the May 1, 2003, effective date. It is not disputed, however, that all of Dr. Lotan's work during the term of the Consulting Agreement related to designing, implementing, and analyzing clinical trials, including collecting regulatory data. Section § 9(b) explicitly provides for assignment of all "inventions, original works of authorship, developments, concepts, know-how, improvements or trade secrets" that Dr. Lotan "conceive[d] or develop[ed] or reduce[d] to practice during the term" of the Consulting Agreement that relate to his work for AngioScore. J.A. 310. AngioScore's theory under § 9(b) is that Dr. Lotan's work relating to his inventive contribution continued after May 1, 2003, and amounted to both "development" and "reduction to practice" within the meaning of § 9(b). *Id.* Thus, AngioScore contends, all of Dr. Lotan's rights in his inventive contribution were assigned to AngioScore even if some of his work was performed before May 1, 2003. Whether Dr. Lotan assigned his rights under § 9(b) thus depends on whether Dr. Lotan's continued work on AngioSculpt after the effective date in fact amounted to "developing," or "reducing to practice" an "invention," "development," or "improvement" pursuant to § 9(b). *Id.* Only if Dr. Lotan's continued work after May 1, 2003, constituted "developing," or "reducing to practice" would his inventive contribution have been assigned to AngioScore under § 9(b) of the Consulting Agreement. *Id.*

It is undisputed that while Dr. Lotan no longer worked on the physical design of the catheter after the effective date, he continued "talking" with AngioScore, performing work relating to designing, implementing, and analyzing clinical trials. J.A. 14. The parties dispute the

significance of this clinical trial work, however, disagreeing as to whether it amounted to "conceiving," "developing," or "reducing to practice" an "invention," "development," or "improvement" pursuant to § 9(b). Discovery before the district court was limited regarding Dr. Lotan's work after May 1, 2003, and there was no trial. Nor did the district court make any findings about this work. The district court merely found that Dr. Lotan's post-effective date work on AngioSculpt "might have amounted to" "developing" or "reducing to practice" his recommendations.[1] J.A. 15. Whether this work falls under § 9(b) remains a question of fact that cannot be resolved on a motion to dismiss. We remand for the district court to consider whether Dr. Lotan's continued work on AngioSculpt after the effective date came within the language of § 9(b).[2]

## REVERSED AND REMANDED

### Costs

Costs to Appellee.

---

[1] AngioScore inaccurately asserts that "the district court ruled that Lotan's work on the catheter after May 1, 2003 constituted such 'development' and 'reduction to practice.'" Appellee's Br. 14–15 (emphasis added). In fact, the district court merely found that such work "might have amounted to" "developing" or "reducing to practice" his recommendations. J.A. 15.

[2] Our opinion should not be read as resolving the question of whether (if Dr. Lotan performed work after May 1, 2003, covered by § 9(b)) Dr. Lotan's pre-May 1, 2003, work was assigned to AngioScore under § 9(b).