# United States Court of Appeals for the Federal Circuit

2008-1208, -1209

BORDEN M. LARSON

Plaintiff-Appellant,

v.

CORRECT CRAFT, INC., WILLIAM SNOOK,
and ROBERT TODD,

Defendants-Appellees.


Beecher A. Larson, Law Office of Beecher A. Larson, of Longwood, Florida, argued for plaintiff-appellant.

Douglas C. Spears, Stump, Dietrich, Spears & Norman, P.A., of Orlando, Florida, argued for defendants-appellees.

Appealed from: United States District Court for the Middle District of Florida

Judge Gregory A. Presnell

# United States Court of Appeals for the Federal Circuit

2008-1208, -1209

BORDEN M. LARSON,

Plaintiff-Appellant,

v.

CORRECT CRAFT, INC., WILLIAM SNOOK,
and ROBERT TODD,

Defendants-Appellees.

Appeals from the United States District Court for the Middle District of Florida in case no. 6:05-CV-686, Judge Gregory A. Presnell.

_____

DECIDED:  June 5, 2009

_____

Before GAJARSA and MOORE, <u>Circuit Judges</u>, and ARTERTON, <u>District Judge</u>.[*]

ARTERTON, <u>District Judge</u>.

Plaintiff-Appellant Borden Larson appeals from decisions by the United States District Court for the Middle District of Florida that granted summary judgment in favor of Defendants-Appellees Correct Craft, Inc. ("Correct Craft"), William Snook, and Robert Todd.  Larson originally filed suit in Florida state court, alleging multiple fraud-based claims under state law, seeking rescission of several patent assignments he executed,

_____

[*]   Honorable Janet Bond Arterton, District Judge, United States District Court for the District of Connecticut, sitting by designation.

and requesting declaratory judgments concerning the parties' respective rights to the patents at issue. Correct Craft removed the case to federal court on the ground that the declaratory-judgment counts, although nominally pleaded under Florida law, were in substance claims to correct inventorship under 35 U.S.C. § 256. At oral argument, we raised the question of whether the district court properly exercised federal-question jurisdiction pursuant to 28 U.S.C. § 1338(a), and we permitted the parties to submit supplemental briefing on this jurisdictional issue.

As we explain below, Larson has no concrete financial interest in the correction of the patents in this case because he has assigned away all of his patent rights, and he claims no purely reputational interest in the patents. Thus, unless and until Larson obtains equitable relief that restores his ownership rights, he has no standing to bring a stand-alone action under § 256. Because his § 256 cause of action was the only basis for removal from state court, it follows that the district court had no basis for exercising subject-matter jurisdiction over the case, and so we lack jurisdiction to reach the merits of Larson's appeal. Accordingly, we vacate the judgment of the district court and remand with instructions.

I.

Correct Craft is a boat manufacturer that employed Larson as a designer from 1986 to 2001. The parties characterize his employment in different terms, but it appears undisputed that he was hired as a draftsman, worked in the engineering department making design changes to boat components, and supervised design and manufacturing work in the "plug and mold shop." By Larson's telling, his responsibilities

included "[d]esigning new products that were competitive in the marketplace, whether it's the hull, the deck, the interior parts," and whatever else "needed to be done."

In mid-1996, Larson sought to re-design part of Correct Craft's "Sport Nautique" model, in particular the placement of an attachment for a tow line for wakeboarders or water skiers. His idea essentially was to mount a tower structure on a water-sports boat that would allow for added storage space as well as the attachment for an elevated tow line. Larson showed his designs for this "wakeboard tower" to William Snook, the Correct Craft engineer who originally hired Larson. At Snook's urging, Larson then presented his idea to management, which approved and directed a prototype to be built. Robert Todd's fabrication company delivered the first prototype later in 1996. Snook was then in charge of the project to improve upon this first-generation tower, during which Larson "had some input."

At issue in this case are the several patents Correct Craft eventually received for the wakeboard tower. In 1997, Snook told Larson that Correct Craft was going to seek patent protection. Larson detailed the inception of his tower idea in writing, and he spoke with Correct Craft's attorneys about what would be needed for the patenting process. The attorneys also presented Larson with patent assignments that they described as formalities and part of the necessary application paperwork. With these assignments, which he executed between 1998 and 2001, Larson transferred all of his interest in the wakeboard-tower invention to Correct Craft. In declarations filed with the Patent and Trademark Office, Larson also attested that he was a co-inventor of the wakeboard tower together with Snook and Todd. Larson received no compensation in

addition to his usual salary as consideration for executing these assignments and declarations.

Larson claims that later, after Correct Craft terminated his employment, he "discovered [his] rights as the wakeboard tower inventor in February of 2003." Believing that Correct Craft misled him about his obligation to sign the patent assignments—and coupled with his belief that the company betrayed him and violated its own commitment to Christian principles—Larson sued Correct Craft, Snook, and Todd in Florida state court on April 22, 2004. Correct Craft removed the case to federal court in May 2005, citing Larson's addition of the declaratory-judgment counts in an amended complaint filed the previous month. In the operative amended complaint, Larson presses eight claims: fraud, constructive fraud, rescission, breach of contract, and unjust enrichment against Correct Craft; and three counts seeking declaratory judgments against Correct Craft, Snook, and Todd concerning the parties' rights to the wakeboard-tower patents.

II.

Following protracted disputes concerning discovery and other matters not relevant here, Larson moved for summary judgment on his declaratory-judgment claims against Snook and Todd, seeking removal of Snook and Todd as co-inventors. The district court denied this motion on January 30, 2008, on the ground that contested issues of material fact—notably, the effect of the numerous documents Larson signed attesting that Snook and Todd were co-inventors—precluded entry of summary judgment. Larson v. Correct Craft, Inc., No. 6:05-cv-686, 2008 WL 276560, at *2 (M.D. Fla. Jan. 30, 2008).

The district court then granted summary judgment in favor of the defendants in two orders. In the first, dated February 1, 2008, the court ruled that Larson had failed to offer sufficient evidence of fraud by Correct Craft to warrant a trial: "[E]ven if one assumes that CCI had no legal right to the wakeboard tower patent, Larson has failed to produce a shred of evidence that CCI knew this at the time they were impliedly telling him otherwise." Larson v. Correct Craft, Inc., 537 F. Supp. 2d 1264, 1269 (M.D. Fla. 2008). The district court also concluded that summary judgment was appropriate on Larson's constructive-fraud claim because there was no evidence of the confidential or fiduciary relationship required under Florida law. Id. Having granted summary judgment on the fraud claims, the district court found that the remaining claims based on the same foundation must suffer the same fate. Id. at 1269–70.

The district court further held, in this February 1 order and also in a second order dated February 4, 2008, that the entry of summary judgment on the substantive fraud-based claims meant that Larson could not succeed on his declaratory-judgment claims because there was no controversy remaining as to his patent rights. Larson v. Correct Craft, Inc., No. 6:05-cv-686, 2008 WL 321455, at *2 (M.D. Fla. Feb. 4, 2008). In the February 4 order, the district court explained that, assuming it still maintained jurisdiction over the claims involving Snook and Todd, there was no basis for removing their names from the wakeboard-tower patents pursuant to 35 U.S.C. § 256 because "[n]o reasonable factfinder could conclude that Larson was a sole inventor" and because an attack on the validity of the patent assignments "is barred by the doctrine of assignor estoppel." Id. at *2–*3. Larson appeals and assigns error to virtually every aspect of these rulings.

We begin with our jurisdiction. "[E]very federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review,'" regardless of whether "the parties are prepared to concede it." Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986) (quoting Mitchell v. Maurer, 293 U.S. 237, 244 (1934)). In its notice of removal in this case, Correct Craft characterized Larson's declaratory-judgment counts as claims for correction of inventorship under 35 U.S.C. § 256. Accordingly, the district court exercised jurisdiction pursuant to 28 U.S.C. § 1338(a)(1), which authorizes subject-matter jurisdiction over "any civil action arising under any Act of Congress relating to patents." We in turn have exclusive appellate jurisdiction over patent cases pursuant to 28 U.S.C. § 1295(a)(1).

There are two issues related to the basis for federal jurisdiction here. First, Larson's claims for declaratory relief, as he pleaded them, did not actually invoke § 256. Therefore, we must examine whether Correct Craft (in removing the case) and the district court (in exercising jurisdiction) correctly treated the declaratory-judgment claims as implicating § 256. Second, because Larson lost his ownership rights and any financial interest he had in the wakeboard-tower patents when he executed the assignments in favor of Correct Craft, we must also determine whether Larson, having not yet prevailed on his separate claim for equitable relief setting aside the patent assignments, nevertheless had standing to pursue a claim for correction of inventorship in federal court.

The appellees argue that the district court had jurisdiction based on the substance of Larson's declaratory-judgment counts–-that is, even though § 256 was

"not specifically pleaded," Larson was in essence seeking the correction of inventorship that § 256 authorizes. Appellees' Suppl. Br. 1, 6–8. Larson does not dispute this; he concedes that his complaint mistakenly cited Florida law. Nevertheless, Larson—now taking a different position than the one he expressed at oral argument—contends that he has no standing to sue under § 256 because he has assigned away his patent rights and because he has pleaded no reputational injury.

A.

The statute on which federal jurisdiction is based in this case, 35 U.S.C. § 256, permits correction of a patent's named inventors as follows:

> Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part, the Director may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.

> The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.

35 U.S.C. § 256. By our construction, § 256 "provides a cause of action to interested parties to have the inventorship of a patent changed to reflect the true inventors of the subject matter claimed in the patent." Fina Oil & Chem. Co. v. Ewen, 123 F.3d 1466, 1471 (Fed. Cir. 1997). "We have previously interpreted § 256 broadly as a 'savings provision' to prevent patent rights from being extinguished simply because the inventors are not correctly listed." Chou v. Univ. of Chi., 254 F.3d 1347, 1358 (Fed. Cir. 2001) (quoting Pannu v. Iolab Corp., 155 F.3d 1344, 1349 (Fed. Cir. 1998)).

Just as the "well-pleaded complaint" rule governs federal-question jurisdiction in general, jurisdiction under § 1338 "extend[s] only to those cases in which a well-pleaded complaint establishes either that federal patent law creates the cause of action or that the plaintiff's right to relief necessarily depends on the resolution of a substantial question of federal patent law, in that patent law is a necessary element of the well-pleaded claims." Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 808–09 (1988). There is no doubt that § 256 supplies such a valid basis for federal jurisdiction: an action to correct inventorship under § 256 "aris[es] under" the patent laws for the purpose of § 1338(a). MCV, Inc. v. King-Seeley Thermos Co., 870 F.2d 1568, 1570 (Fed. Cir. 1989).

Larson's amended complaint includes three counts seeking declaratory judgments–-count eight (against Correct Craft), count nine (against Todd), and count ten (against Snook). In each of these three counts, Larson alleges:

> An actual and justiciable controversy now exists between LARSON and defendant[s] . . . in that plaintiff LARSON asserts that the defendant[s'] claim[s] to the aforesaid inventions and patents are invalid and defendant[s] assert[] that [their] claims are valid, and until such controversy is settled, plaintiff LARSON cannot properly proceed to license or assign his right, title, and interest in and to the inventions and patents, or to manufacture, use, and sell the inventions under the patents.

J.A. 78–80. Count eight seeks a declaration that Larson's assignments do not clearly transfer title to the wakeboard-tower patents and that Correct Craft has only a nonexclusive license to the patents. Counts nine and ten, in turn, seek declarations that Todd and Snook have "no rights to claim co-inventorship of the tower." J.A. 80–81. Each count purports to arise under Florida Statutes § 86.011, which provides, in part: "The circuit and county courts have jurisdiction within their respective jurisdictional

amounts to declare rights, status, and other equitable or legal relations whether or not further relief is or could be claimed."

These allegations, fairly construed, reveal that Larson seeks a judicial determination that he, not Todd or Snook, is the true and sole inventor of the wakeboard tower. In substance, that is the same relief that the patent statute provides in § 256, and in other contexts we have treated requests for declaratory relief relating to inventorship as functional equivalents of actions formally brought pursuant to § 256. See, e.g., Chou, 254 F.3d at 1360 (opining that "a declaratory judgment under 28 U.S.C. § 2201 and 2202 . . . would not afford [plaintiff] any relief that is not also available through the § 256 action"); MCV, 870 F.2d at 1571 ("That [plaintiff] misstated the nature of its suit [as a declaratory-judgment action] was harmless and is not fatal to its otherwise well-pleaded cause of action."). Given the true nature of Larson's declaratory-judgment claims, we will accept that Larson pleaded an action for correction of inventorship pursuant to § 256.

## B.

Larson must not only allege a well-pleaded patent claim, however. He must also have standing to pursue that claim. Whether the plaintiff has Article III standing "is the threshold question in every federal case, determining the power of the court to entertain the suit." Warth v. Seldin, 422 U.S. 490, 498 (1975). "'Since the question of standing goes to this court's jurisdiction[,] we must decide the issue even though the court below passed over it without comment.'" Corus Group PLC v. Int'l Trade Comm'n, 352 F.3d 1351, 1357 (Fed. Cir. 2003) (quoting Jenkins v. McKeithen, 395 U.S. 411, 421 (1969)). More than just our appellate jurisdiction is at stake: if the jurisdiction-conferring patent

claim is dismissed for lack of standing, the district court cannot exercise supplemental jurisdiction over surviving state-law claims because there was never an Article III case or controversy. Textile Prods., Inc. v. Mead Corp., 134 F.3d 1481, 1486 (Fed. Cir. 1998); Gaia Techs., Inc. v. Reconversion Techs., Inc., 93 F.3d 774, 781, as amended, 104 F.3d 1296, 1297 (Fed. Cir. 1996); see also Salmon Spawning and Recovery Alliance v. U.S. Customs and Border Prot., 550 F.3d 1121, 1133 (Fed. Cir. 2008) (noting that "supplemental jurisdiction cannot be exercised when a court does not have original jurisdiction over at least one claim in the suit").

We previously confronted the relationship between a suit under § 256 and the elements of constitutional standing in Chou v. University of Chicago. In that case, the plaintiff, a university research scientist, alleged that her name had been improperly omitted from several patents and foreign applications. 254 F.3d at 1353–54. Although the terms of her academic appointment obliged her to assign her inventions to the university, Chou sought correction of inventorship under § 256, citing the fact that she, if identified as an inventor, would be entitled (under university policy) to royalties, licensing revenue, and equity in start-up companies. Id. at 1355. After surveying our own case law, we declined to hold that a plaintiff in an action under § 256 must have an ownership interest at stake in the suit to have standing:

> We conclude that an expectation of ownership of a patent is not a prerequisite for a putative inventor to possess standing to sue to correct inventorship under § 256. The statute imposes no requirement of potential ownership in the patent on those seeking to invoke it. . . . Chou should have the right to assert her interest, both for her own benefit and in the public interest of assuring correct inventorship designations on patents.

Id. at 1358. Rather, we found that Chou's "concrete financial interest" in the patents, owing to her relationship with the university, was enough to satisfy the three requirements for standing under Article III:

> If Chou has indeed been deprived of an interest in proceeds from licensing the invention and in stock ownership by the conduct that she alleges, then she will have suffered an injury-in-fact, i.e., the loss of those benefits. That loss would be directly traceable to Roizman's alleged conduct in naming himself as the sole inventor of discoveries that she at least partly made, and it would be redressable by an order from the district court to the Director of the PTO to issue a certificate naming Chou as an inventor, which would entitle her under the University's policy to a share of the licensing proceeds and stock already received by Roizman. We therefore determine that Chou is entitled to sue for correction of inventorship under § 256.

Id. at 1359.

Chou thus teaches that a plaintiff seeking correction of inventorship under § 256 can pursue that claim in federal court only if the requirements for constitutional standing—namely injury, causation, and redressability—are satisfied. Larson is in a different position than the plaintiff in Chou, however. Larson has affirmatively transferred title to the patents to Correct Craft, and he stands to reap no benefit from a preexisting licensing or royalties arrangement. His only path to financial reward under § 256 in this case involves him first succeeding on his state-law claims and obtaining rescission of the patent assignments. With his ownership of the wakeboard-tower patents being contingent in this manner, Larson has no financial interest in the patents sufficient for him to have standing to pursue a § 256 claim.

We addressed a similar issue in Jim Arnold Corp. v. Hydrotech Systems, Inc., 109 F.3d 1567, 1571–72 (Fed. Cir. 1997), in which a plaintiff who had assigned away all his patent rights sued for patent infringement and also sought to rescind the

assignments through claims brought under state law. Reaffirming that questions of patent ownership are determined by state law, we explained that the plaintiff lacked standing to pursue his infringement claim because, "absent judicial intervention to change the situation," he did not have an ownership interest in the patents. Id. at 1572. Although Jim Arnold involved an infringement claim rather than an action to correct inventorship, the reasoning of that case nevertheless applies here. Without first voiding his patent assignments, Larson has no ownership interest in the wakeboard-tower patents. Just as Larson would lack standing to sue for infringement unless and until he regains title to the patents, so, too, he has no non-contingent interest in the patents on which to support his standing to correct inventorship under § 256.

Chou and Jim Arnold together compel the following conclusion: Larson's financial stake in the patents is contingent on him obtaining relief that a federal court has no jurisdiction under § 1338 to provide. Because Larson lacks an ownership interest, and because being declared the sole inventor will not generate any other direct financial rewards as in Chou, Larson has no constitutional standing to sue for correction of inventorship in federal court.

C.

As a final matter, appellees argue that even without a direct financial interest in the patents, Larson has standing based on his reputational interest in being correctly named as the sole inventor of the wakeboard tower. Quoting Larson's allegations in the declaratory-judgment counts, appellees contend: "By these allegations Larson is expressly seeking a court determination that only he can hold himself out as the inventor of the tower," which "is the reputational aspect of invention possessed by the

inventor which this Court discussed in <u>Chou</u>."  Appellees' Suppl. Br. 8.  In <u>Chou</u>, however, we declined to go so far as to say that a reputational interest is sufficient, standing alone, to confer constitutional standing in a § 256 action.  254 F.3d at 1359.  Although we noted that it was "not implausible," we did not resolve the matter because Chou in fact had alleged a sufficient financial interest.  <u>Id.</u>

Appellees correctly point out that, in the three counts for declaratory relief, Larson asserts his right "to claim sole inventorship of the tower invention."  That statement, however, is then directly linked to the financial benefits associated with sole inventorship, which Larson defines as "including the right to license or assign his interest, and the right to manufacture, use, and sell the subject matter of the patents to his inventions."  Larson confirms this by alleging that there is a justiciable controversy because, until his rights are restored, he "cannot properly proceed to license or assign his right, title, and interest in and to the inventions and patents, or to manufacture, use, and sell the inventions under the patents."  Furthermore, in his supplemental brief, Larson emphasized that the injuries he claimed were financial, not reputational.

Thus, we need not answer the question we left open in <u>Chou</u>—whether a purely reputational interest is sufficient to confer standing for a § 256 claim—because the issue is simply not presented by these facts.  Larson claims no reputational injury, and so that cannot be a basis on which to find standing.

IV.

In conclusion, Larson lacks constitutional standing to assert his claims for correction of inventorship under 35 U.S.C. § 256 in federal court.  We therefore find that the district court lacked jurisdiction to hear the case pursuant to 28 U.S.C. § 1338(a).

Accordingly, we vacate the judgment of the district court in favor of the defendants-appellees and remand the case to that court with instructions to return the case to the Circuit Court of the Ninth Judicial Circuit, in and for Orange County, Florida.

<u>VACATED AND REMANDED WITH INSTRUCTIONS</u>

COSTS

Each party shall bear its own costs.