# United States Court of Appeals
# for the Federal Circuit

---

**ALEXANDER SHUKH,**
*Plaintiff-Appellant*

**v.**

**SEAGATE TECHNOLOGY, LLC, A DELAWARE
LIMITED LIABILITY COMPANY, SEAGATE
TECHNOLOGY, INC., A DELAWARE
CORPORATION, SEAGATE TECHNOLOGY, A
HOLDING COMPANY OF THE CAYMAN ISLANDS,
SEAGATE TECHNOLOGY PLC, AN IRISH PUBLIC
LIMITED COMPANY,**
*Defendants-Appellees*

**UNKNOWN OWNERS AND ASSIGNEES,**
*Defendant*

---

2014-1406

---

Appeal from the United States District Court for the District of Minnesota in No. 0:10-cv-00404-JRT-JJK, Judge John R. Tunheim.

---

Decided: October 2, 2015

---

CONSTANTINE JOHN GEKAS, Gekas Law LLP, Chicago, IL, argued for plaintiff-appellant.

CHAD DROWN, Faegre Baker Daniels LLP, Minneapolis, MN, argued for defendants-appellees. Also represented by DAVID J.F. GROSS, ELIZABETH COWAN WRIGHT, AARON D. VAN OORT, CHARLES FEENEY KNAPP, JEYA PAUL; CALVIN L. LITSEY, East Palo Alto, CA.

———————————

Before MOORE, WALLACH, and TARANTO, *Circuit Judges.*

MOORE, *Circuit Judge.*

Alexander Shukh appeals from the district court's dismissal of some of his claims for failure to state a claim and its grants of summary judgment on his remaining claims in favor of the defendants, Seagate Technology, LLC; Seagate Technology, Inc.; Seagate Technology; and Seagate Technology PLC (collectively, "Seagate"). Dr. Shukh also appeals from several of the court's discovery orders and other ancillary orders. For the reasons discussed below, we *vacate* and *remand* the court's grant of summary judgment on Dr. Shukh's claim for correction of inventorship under 35 U.S.C. § 256 and *affirm* its remaining holdings.

## BACKGROUND

Dr. Shukh, a native of Belarus, is a leading scientist in the field of semiconductor physics, with a Ph.D. in Condensed Matter Physics and a B.S. and an M.S. in Electronics and Electronic Engineering. In 1997, Seagate recruited Dr. Shukh to move to the United States and work for it. Dr. Shukh was employed at Seagate from September 1997 until his termination in early 2009. During his employment, Seagate sponsored Dr. Shukh for an H-1B work visa, a visa extension, and eventually permanent residency. At Seagate, Dr. Shukh was named

as an inventor on 17 patents.[1]   He received numerous awards for his achievement and innovation generally and on specific products, and was named to the Seagate Technology Inventor's Hall of Fame.   The district court found that Dr. Shukh had a reputation as "an extremely successful innovator in the hard disk drives engineering community."   *Shukh v. Seagate Tech., LLC*, No. CIV. 10-404 JRT/JJK, 2013 WL 1197403, at \*3 (D. Minn. Mar. 25, 2013) ("*Summary Judgment Order*").

When he was hired, Dr. Shukh executed Seagate's standard At-Will Employment, Confidential Information, and Invention Assignment Agreement ("Employment Agreement"), in which Dr. Shukh agreed to "hereby assign to [Seagate] all [his] right, title, and interest in and to any inventions" made while at Seagate.   J.A. 600. Seagate policy prohibited Seagate employees from filing patent applications themselves for their inventions. Instead, they were required to submit Employee Invention Disclosure Forms to Seagate's Intellectual Property ("IP") Department.   Inventors were responsible for identifying co-inventors of their inventions on these forms.   The IP Department would then forward the form to the internal Patent Review Board, which would determine whether, for example, to pursue a patent application for the invention or to protect it as a trade secret.

Dr. Shukh's time at Seagate was undisputedly tumultuous.   His performance evaluations indicated that he did not work well with others due to his confrontational style. Moreover, Dr. Shukh's conduct interfered with his productivity.   For example, Dr. Shukh applied a "three-strikes" rule to interactions with his coworkers, under

---

[1]   Dr. Shukh was also awarded fifteen patents by the former Soviet Union and a number of U.S. patents for inventions not at Seagate.

which he would stop communicating with coworkers who had engaged three times in behavior he considered dishonest. Dr. Shukh also frequently accused others of stealing his work, and his managers criticized him for his insistence on receiving credit for his work. To avoid accusations of plagiarism, some Seagate employees refused to attend presentations by Dr. Shukh.

In 2009, Seagate terminated Dr. Shukh and 178 other employees. Although he has submitted many job applications to other potential employers, Dr. Shukh has not yet secured employment. Dr. Shukh claims that the hiring manager of Hitachi, a company to which he applied, contacted a Seagate employee to discuss rumors the Hitachi manager had heard about Dr. Shukh. Moreover, a Hitachi engineer told Dr. Shukh during his interview that he would never find employment at Hitachi with his reputation.

This lawsuit stems, in part, from Dr. Shukh's allegations that Seagate has not properly credited him for his inventions. Specifically, Dr. Shukh alleges that during his tenure at Seagate, Seagate wrongfully omitted him as an inventor from six patents (U.S. Patent Nos. 7,233,457; 7,684,150; 6,525,902; 6,548,114; 6,738,236; and 7,983,002) and four pending patent applications, all relating to semiconductor technologies. He also claims that Seagate discriminated against him and wrongfully terminated him both on the basis of his national origin and in retaliation for complaining about the discrimination.

In his original complaint, Dr. Shukh asserted thirteen claims against Seagate, including claims for correction of inventorship of the disputed patents pursuant to 35 U.S.C. § 256, rescission of his Employment Agreement, breach of contract, fraud, breach of fiduciary duty, unjust enrichment, and federal and state retaliation and national origin discrimination claims. He also sought a declara-

tory judgment that certain provisions of his Employment Agreement were unenforceable.

Seagate moved to dismiss Dr. Shukh's § 256 claim for lack of standing. Dr. Shukh alleged three distinct interests in the patents: an ownership interest, a financial interest, and a reputational interest. At the motion to dismiss stage, the district court held that Dr. Shukh had no ownership or financial interest in the patents because he automatically assigned all of his inventions to Seagate in his Employment Agreement. The court left open the possibility that Dr. Shukh had standing to sue based on reputational harm caused by his omission from the disputed patents. The district court also dismissed for failure to state a claim Dr. Shukh's claims for rescission of his Employment Agreement, breach of contract, breach of fiduciary duty, unjust enrichment, and declaratory judgment.

Two years later, Seagate moved for summary judgment on Dr. Shukh's § 256 claim. The court granted Seagate's motion, holding that there was no genuine dispute of material fact as to whether Dr. Shukh suffered reputational harm from not being named an inventor on the patents. *Summary Judgment Order* at \*13. It also granted Seagate's motion for summary judgment on Dr. Shukh's fraud claim. One week later, the district court granted Seagate's motion for summary judgment on Dr. Shukh's federal and state retaliation and national origin discrimination claims. Throughout the course of the case, the district court made rulings on discovery and other ancillary issues. Dr. Shukh has appealed many of the district court's decisions. Because the district court had jurisdiction over this case pursuant to 28 U.S.C. §§ 1338(a) and 1367, we have jurisdiction over this appeal under 28 U.S.C. § 1295(a)(1).

DISCUSSION

We review a district court's grant of summary judgment under the law of the regional circuit. *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1344 (Fed. Cir. 2012). The Eighth Circuit reviews a grant of summary judgment de novo. *Wilson v. Spain*, 209 F.3d 713, 716 (8th Cir. 2000). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

We review standing de novo. *Rack Room Shoes v. United States*, 718 F.3d 1370, 1374 (Fed. Cir. 2013). To establish standing, a plaintiff must demonstrate that he suffered an injury-in-fact, that the injury is traceable to the conduct complained of, and that the injury is redressable by a favorable decision. *Chou v. Univ. of Chi.*, 254 F.3d 1347, 1357 (Fed. Cir. 2001). The alleged harm must be concrete and particularized. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Dr. Shukh challenges the district court's decision that he lacked standing to pursue his § 256 claim on two grounds. First, he argues that we should overrule our holding in *Filmtec Corp. v. Allied-Signal, Inc.*, 939 F.2d 1568 (Fed. Cir. 1991). Under *Filmtec*, Dr. Shukh's assignment in the Employment Agreement of his ownership and financial interests in his inventions conveyed legal title in those inventions to Seagate. *Id.* at 1573. Because of this conveyance, the district court found that Dr. Shukh has no ownership interest or financial interest in the patents that would give him standing to pursue his § 256 claim. *See DDB Tech., L.L.C. v. MLB Advanced Media, L.P.*, 517 F.3d 1284, 1290 (Fed. Cir. 2008). As a panel, we

are bound by *Filmtec*; we cannot overrule that holding without en banc action.

Dr. Shukh also argues that the district court erred in granting summary judgment to Seagate on his § 256 claim for lack of standing. He argues that a trier of fact could conclude that his reputation was damaged because he was not recognized as the inventor of the patents. In the past, we have declined to decide whether reputational injury, standing alone, may satisfy the constitutional standing requirements for a § 256 claim. *Chou*, 254 F.3d at 1359 (declining to consider whether reputational injury could satisfy Article III standing requirements because the claimed inventor had alleged a concrete financial interest in the patent); *Larson v. Correct Craft, Inc.*, 569 F.3d 1319, 1327–28 (Fed. Cir. 2009) (declining to decide whether reputational injury could satisfy Article III standing requirements because the claimed inventor had not alleged any reputational injury).

Today, we hold that concrete and particularized reputational injury can give rise to Article III standing. As we noted in *Chou*, "being considered an inventor of important subject matter is a mark of success in one's field, comparable to being an author of an important scientific paper." 254 F.3d at 1359. We reasoned that "[p]ecuniary consequences may well flow from being designated as an inventor." *Id.* This is particularly true when the claimed inventor is employed or seeks to be employed in the field of his or her claimed invention. For example, if the claimed inventor can show that being named as an inventor on a patent would affect his employment, the alleged reputational injury likely has an economic component sufficient to demonstrate Article III standing.

We find that there is a question of material fact as to whether Dr. Shukh's omission as a named inventor on the disputed patents caused him reputational injury.

Dr. Shukh presented evidence such that a trier of fact could conclude that this omission injured his reputation in at least two ways: first, it harmed his reputation as an inventor in the field of semiconductor physics, and second, it contributed to his reputation for poor teamwork due in part to his accusations that others were stealing his work. Moreover, Dr. Shukh presented evidence from which a trier of fact could conclude that these reputational harms had economic consequences—namely, that Dr. Shukh was unable to find employment after he was terminated from Seagate. We address these three issues in turn.

## I.          Dr. Shukh's Reputation as an Inventor

First, a genuine dispute exists as to whether Dr. Shukh's omission as a named inventor on the disputed patents harmed his reputation as an inventor. Dr. Shukh presented evidence supporting his contention that a scientist's professional reputation is influenced by the number of patents on which that scientist is named. He provided an expert report explaining that being named on a patent means that the inventor's "standing and reputation in the related technology community has been enhanced, including among their employers or potential employers." J.A. 8817. The expert also wrote that "inventors take great pride in their inventorship abilities and accomplishments" and that named inventors' contributions on patents are "considered positively when a technology professional is being considered for a promotion." J.A. 8816; *see also* J.A. 5592 (expert report stating that adding the disputed patents to Dr. Shukh's portfolio would have "significantly strengthened" his claim to the Immigration and Naturalization Service that he was an "outstanding professor or researcher" and therefore merited permanent residency).

Dr. Shukh also showed that Seagate itself valued the number of patents its employees were named on. For

example, Seagate gave financial rewards, J.A. 5215, and enrolled employees in its Inventor's Hall of Fame, J.A. 5214, based on an employee's number of named patents. Dr. Shukh's Fiscal Year 2007 Performance Evaluation further reinforces this conclusion. In the performance evaluation, Dr. Shukh's manager wrote that Dr. Shukh "has a significant patent portfolio; however, I am concerned that the number of patent applications has been reduced over the last two years—albeit, partially due to issues with the [Seagate Patent Review Board] and Seagate policy." J.A. 5222. He concluded that he would "like to see [Dr. Shukh] increase his patent portfolio in [Fiscal Year 2008]."[2] *Id.*

The district court acknowledged this evidence, but nonetheless concluded that Dr. Shukh did not raise a genuine issue of material fact with respect to his reputation as an inventor. In doing so, it relied on undisputed testimony from Dr. Shukh and his former manager and coworkers that Dr. Shukh had a reputation as a leading scientist in his field. *Summary Judgment Order* at *10. The court also noted that Dr. Shukh testified that his reputation for "honesty, good organization, openness and

---

[2] The district court discounted this evidence because the manager "clarified in his deposition testimony that he was concerned with the decrease in the number of invention disclosures that [Dr.] Shukh made to Seagate, and not concerned with the decrease in the total number of patent applications filed with the USTPO that listed [Dr.] Shukh as an inventor." *Summary Judgment Order* at *12. In doing so, the district court improperly made a factual finding on summary judgment. *Cf. Anderson*, 477 U.S. at 249–50. Moreover, this interpretation contradicts the plain language of the evaluation. The district court erred when it discounted Dr. Shukh's performance evaluation at this stage.

straightforwardness and communications, good technical abilities, innovation and extreme competitiveness did not change from 2002 until 2012." *Id.* (quoting J.A. 8962–64) (alteration omitted). Finally, the court wrote that Dr. Shukh's former co-workers testified that their impression of Dr. Shukh as an "excellent inventor with good technical skills" would not change based on the number of patents he was named on. *Id.* at *12. From all this, the district court concluded that Dr. Shukh's professional reputation had not been harmed by his omission from the disputed patents.

In coming to this conclusion, the district court improperly made findings of fact on summary judgment and did not make all factual inferences in Dr. Shukh's favor. A trier of fact could conclude that Dr. Shukh's omission from the disputed patents had a concrete impact on his reputation in his field. There is significant evidence that the number of patents an inventor is named on influences his reputation in the field of the patents. Dr. Shukh's professional reputation is based on his work in semiconductor physics—the same field as the disputed patents. Moreover, Dr. Shukh is named as an inventor on seventeen issued patents for work done at Seagate; he argues here that he should be named as an inventor on an additional six issued patents and four pending applications. The disputed patents would therefore form a significant portion of the patents granted to Dr. Shukh during his tenure at Seagate.

True, it is undisputed that Dr. Shukh had a reputation as an excellent inventor, and that this reputation did not decrease while he was at Seagate. However, this does not mean that Dr. Shukh's omission from the patents did not harm his reputation. The evidence supports the conclusion that Dr. Shukh's reputation as an inventor would have been higher had he been named on the patents. Likewise, the testimony of Dr. Shukh's coworkers

that additional patents would not change their impression of Dr. Shukh's technical abilities does not speak to whether additional patents would improve Dr. Shukh's reputation in the eyes of potential employers. Dr. Shukh's coworkers had years of experience working directly with Dr. Shukh, unlike potential employers, who likely lack that first-hand knowledge and are therefore more likely to rely on their knowledge of Dr. Shukh's reputation in evaluating their impression of him. Considering all of the evidence, we find there is a genuine dispute of material fact as to whether Dr. Shukh's reputation as an inventor was harmed by his omission from the disputed patents.

## II.    Dr. Shukh's Reputation for Seeking Credit for His Inventions

There is also a genuine dispute of material fact as to whether Dr. Shukh's omission from the disputed patents worsened his reputation as an employee, and whether his reputation would improve if he prevailed in this lawsuit. The record shows that Dr. Shukh had a negative reputation at Seagate, in part because he aggressively sought credit for his inventions. In his Fiscal Year 2007 Performance Evaluation, Dr. Shukh's manager wrote:

> [Dr. Shukh's] insistence on getting appropriate credit for all design ideas and implementations stifles open discussion and adoption of his ideas. Since this issue has become more important to [Dr. Shukh] as time goes on, and since he believes he has not been fairly recognized for his past contributions, it's an emotional issue. Most unfortunately, it appears to others that [Dr. Shukh] is more interested in being right and in getting credit than in ensuring that Seagate wins. [Dr. Shukh] will become more effective, and his contributions will increase significantly, if he can find ways to let others see that he truly is inter-

> ested primarily in Seagate's success, rather than
> in his own advancement or preventing theirs.

J.A. 5222. Dr. Shukh's manager also indicated that Dr. Shukh demonstrated "unsatisfactory" teamwork skills, explaining that he "is often insistent on getting appropriate or complete credit for his work" and that he "repeatedly accused" Seagate workers of "stealing his work." J.A. 5223; *see also Summary Judgment Order* at *4. Dr. Shukh argues that if he is named an inventor on the disputed patents, it may rehabilitate his reputation for seeking credit for his ideas.

On summary judgment, the district court held that Dr. Shukh's "reputation for being antagonistic toward his employer and coworkers regarding ownership of patents . . . is too attenuated to confer standing." *Summary Judgment Order* at *11. It found that this harm was not traceable to Seagate's omission of Dr. Shukh as an inventor because Dr. Shukh first developed this reputation in 2005, before he learned of his omission from the disputed patents. *Id.* at *11. Moreover, it reasoned that this harm was not redressable by a § 256 claim because adding Dr. Shukh's name to the disputed patents would not "dispel [Dr.] Shukh's reputation for accusing others of stealing his work in a manner that disrupts effective collaboration." *Id.* at *11 n.13.

We disagree with the district court's conclusions. First, we find there is a genuine dispute of material fact as to whether Dr. Shukh's negative reputation for seeking credit for his inventions is traceable to Seagate's omission of Dr. Shukh as an inventor from the disputed patents. In deciding that the harm was not traceable, the district court relied on the fact that "[Dr.] Shukh's reputation for accusing others of stealing his work and insisting on credit for all of his ideas was established well before the disputed patents became an issue between [Dr.] Shukh

and Seagate." *Id.* It is true that Dr. Shukh did not know of the disputed patents before his reputation for seeking credit for his inventions began to develop. However, his disputes with Seagate over his omission from the patents and this subsequent lawsuit have likely significantly worsened Dr. Shukh's reputation on this front. Moreover, the fact that Dr. Shukh did not know of his omission did not mean he was not responding (directly or indirectly) to Seagate's actions in not crediting him as an inventor. There is evidence that Dr. Shukh's accusations of plagiarism and insistence on receiving credit for his ideas stemmed from his concerns about not receiving proper credit for his inventions—concerns acknowledged by Dr. Shukh's manager as valid. *See* J.A. 5223 ("I have come to see over the past 6 months that [Dr. Shukh] sometimes doesn't receive proper credit for work he has done in the past."). And Dr. Shukh's omission from the disputed patents occurred before he developed this reputation—five of them were filed before 2005. Certainly, the record suggests that an element of Dr. Shukh's reputation arises from his own combative personality. But there is a genuine dispute of material fact as to whether Dr. Shukh's negative reputation is traceable to Seagate's actions. In deciding to the contrary, the district court improperly made factual inferences in Seagate's favor.

There is also a genuine dispute of material fact as to whether finding for Dr. Shukh on his § 256 claim would rehabilitate his reputation for accusing others of stealing his work. If Dr. Shukh prevails in this lawsuit, outsiders may conclude that Dr. Shukh's reputation on this point stemmed from Seagate's failure to properly credit him. His reputation could change from an inventor with a "reputation for accusing others of stealing his work in a manner that disrupts effective collaboration," *Summary Judgment Order* at *11 n.13, to that of an inventor wronged by his employer, properly seeking credit for his

own work. Here, the district court improperly made factual findings on summary judgment and made factual inferences in Seagate's favor when it found this harm was not redressable.

### III. Dr. Shukh's Unemployment

Finally, Dr. Shukh presented evidence that his alleged reputational harm had an economic component. Dr. Shukh has been unemployed since 2009, and he seeks a job in the field of technology covered by the disputed patents. A trier of fact could infer that the stronger Dr. Shukh's reputation as an inventor, the more likely he is to be hired. This is particularly true in light of his difficult personality. Furthermore, there is evidence tying Dr. Shukh's negative reputation at Seagate—including, one presumes, his reputation for seeking credit for his own inventions—to his unemployment. *Summary Judgment Order* at *5 (writing that an engineer at a company Dr. Shukh interviewed with allegedly told Dr. Shukh that he would never get a job there because of his reputation at Seagate). Thus, a trier of fact could conclude that Dr. Shukh's employment prospects have been harmed by the impact of his alleged omission from the disputed patents on his reputation as an inventor and his reputation for seeking credit for his own ideas. Moreover, a trier of fact could infer that Dr. Shukh's employment prospects would improve if the inventorship of the disputed patents was corrected. Dr. Shukh's inability to obtain employment is a concrete and particularized financial harm that suffices to create Article III standing.

To be sure, we sympathize with the district court. It issued a number of thoughtful and thorough orders in what must have been a very difficult case. All things considered, the district court has done an admirable job dealing with the many issues raised below. We have considered Dr. Shukh's remaining arguments, and find no

merit in them. We therefore vacate and remand this case only with respect to the court's ruling on reputational injury, and affirm the rest of the district court's holdings challenged on appeal.

CONCLUSION

We *vacate* and *remand* the district court's grant of summary judgment on Dr. Shukh's claim for correction of inventorship under 35 U.S.C. § 256 and *affirm* its remaining holdings.

**VACATED AND REMANDED IN PART, AFFIRMED IN PART**

COSTS

No costs.