NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**RICKY KAMDEM-OUAFFO,**
*Plaintiff-Appellant*

**v.**

**PEPSICO INC., PETER S. GIVEN, JR., NAIJIE ZHANG, SCENTSATIONAL TECHNOLOGIES LLC, STEVEN M. LANDAU,**
*Defendants-Appellees*

---

2016-1668

---

Appeal from the United States District Court for the Southern District of New York in No. 7:14-cv-00227-KMK, Judge Kenneth M. Karas.

---

Decided: August 5, 2016

---

RICKY KAMDEM-OUAFFO, New Brunswick, NJ, pro se.

ROBERT LAWRENCE MAIER, Baker Botts, LLP, New York, NY, for defendants-appellees PepsiCo Inc., Peter S. Given, Jr., Naijie Zhang. Also represented by JENNIFER COZEOLINO TEMPESTA.

MELVIN C. GARNER, Leason Ellis LLP, White Plains, NY, for defendants-appellees ScentSational Technologies LLC, Steven M. Landau. Also represented by LAUREN BRETTE SABOL; JOEL B. ROTHMAN, Schneider Rothman IP Law Group, Boca Raton, FL.

———————————

Before DYK, BRYSON, and REYNA, *Circuit Judges.*

PER CURIAM.

Dr. Ricky Kamdem-Ouaffo appeals from a decision of the United States District Court for the Southern District of New York dismissing with prejudice Dr. Kamdem-Ouaffo's Second Amended Complaint. *Kamdem-Ouaffo v. PepsiCo, Inc.*, No. 14-CV-227, 2016 WL 369684, at *1 (S.D.N.Y. Jan. 26, 2016). We *affirm*.

## BACKGROUND

Dr. Kamdem-Ouaffo worked as a food scientist at PepsiCo, Inc.'s ("PepsiCo") research and development facility in Valhalla, NY, from July 14, 2008, to September 28, 2009, for which he received $82,142 in compensation for his work. **[*Id.*]** He was not formally employed by PepsiCo, but by Subex Technologies, Inc. ("Subex"), which provided his services to PepsiCo. Before beginning work, on July 9, 2008, Dr. Kamdem-Ouaffo signed an agreement (the "Agreement" or "Attachment B") in which he stated that he did "hereby assign and agree to assign to [Pepsi-Co] all [his] right, title and interest in and to all inventions, discoveries, improvements, ideas, . . . and other works of authorship (collectively, 'Intellectual Property'), whether or not patentable, . . . created, developed, written

or conceived by [him] during the period of such work." Appendix ("App.") tab 22 at 1.[1]

---

[1]    Attachment B to the Staffing Supplier Agreement, titled "Staffing Supplier Employee Agreement Regarding Confidentiality and Intellectual Property," provided:

> In consideration of payment to me by my employer, the Staffing Supplier named below . . . for the performance of work or assignments for PepsiCo, Inc. or any of its affiliates (hereinafter "Company") . . . I agree to the following provisions:
>
> A.  I hereby assign and agree to assign to Company all my right, title and interest in and to all inventions, discoveries, improvements, ideas, products, formulae, machines, mask works, designs, methodologies, processes, know-how, research and development, . . . and other works of authorship (collectively, "Intellectual Property"), whether or not patentable, . . . created, developed, written or conceived by me during the period of such work . . . in whole or in part
>
> > 1. In the course of such work or assignment, or
> >
> > 2. Which are suggested by or result from any task assigned to me . . . or
> >
> > 3. With the use of Company's time, material, facilities, or private or proprietary information;
> >
> > . . . .
>
> C.  This Agreement does not constitute a contract of employment between Company and me . . . .

*Id.* The Agreement identified Subex Technologies Inc. as the Staffing Supplier. *Id.* at 2. Dr. Kamdem-Ouaffo also

Dr. Kamdem-Ouaffo alleges that, no later than September 16, 2009, PepsiCo "expunged [his] name from" intellectual property he created during his employment. *Kamdem-Ouaffo*, 2016 WL 369684, at \*2 (internal quotation marks and citation omitted). On September 28, 2009, Dr. Kamdem-Ouaffo's work assignment contract expired and it was not renewed. Dr. Kamdem-Ouaffo sent a letter to PepsiCo in which he made an "authorship claim on any current or future work resulting in . . . flavor encapsulates or . . . aroma delivery systems." *Id.* (internal quotation marks and citation omitted). PepsiCo subsequently filed five patent applications. Four of the applications remain pending. One of the applications became U.S. Patent No. 8,474,637 ("the '637 patent") for "Releasable Entrapment of Aroma Using Polymeric Matrix," granted on July 2, 2014. *Id.* at \*3. The named inventors of the '637 patent are Dr. Naijie Zhang and Dr. Peter Given, two PepsiCo employees. *See* '637 patent. On October 11, 2012, Dr. Kamdem-Ouaffo submitted a request to PepsiCo, asking that it amend the relevant patent applications and patent to credit him as an inventor. PepsiCo did not reply or make any amendments.

Dr. Kamdem-Ouaffo commenced this action on January 31, 2014, **[*id.*]** initially alleging thirteen causes of action against PepsiCo, Dr. Zhang, and Dr. Given.[2] Pep-

---

signed "Attachment C to the Staffing Supplier Agreement: Acknowledgement of Temporary Work Assignment," which stated "I understand that I am an employee of the Staffing Supplier and I am not an employee of PepsiCo, Inc. or any of its affiliates (collectively, 'PepsiCo')." *Id.* at 3.

[2]    Dr. Kamdem-Ouaffo alleged "breach of intellectual property agreement," "wrongful appropriation of plaintiff's intellectual property," "fraudulent obtaining of signature," "correction of inventorship," "unjust enrich-

siCo filed a motion to dismiss on June 6, 2014, and the district court dismissed the First Amended Complaint without prejudice on March 9, 2015. On March 25, 2015, Dr. Kamdem-Ouaffo filed his Second Amended Complaint, alleging five causes of action, and joining ScentSational Technologies LLC and its Chief Technology Officer Steven Landau (collectively, "ScentSational").[3] Dr. Kamdem-Ouaffo alleged (1) that the Agreement is unenforceable, invalid, or voidable; (2) unjust enrichment; (3) constructive trust; (4) correction of inventorship under 35 U.S.C. § 256; and (5) defamation.[4]

---

ment," "the necessity of constructive trusts," a "request for subpoenas," three causes of action relating to alleged false statements made to the USPTO, and three causes of action relating to other alleged criminal conduct. *Kamdem-Ouaffo*, 2016 WL 369684, at *3.

[3] After ScentSational and PepsiCo filed motions to dismiss the Second Amended Complaint, and without the court's permission, Dr. Kamdem-Ouaffo submitted a Proposed Second Amended Complaint With More Definitive Statements ("Revised Second Amended Complaint"). The district court did not consider, for the purposes of resolving the motions to dismiss, Dr. Kamdem-Ouaffo's Revised Second Amended Complaint. It did not abuse its discretion in doing so, having determined that the filing was untimely, dilatory, and "the purportedly more definitive statements contained in the Revised [Second Amended Complaint] ultimately offer 'no clue as to how the [Second Amended Complaint's] defects would be cured.'" *Kamdem-Ouaffo*, 2016 WL 369684, at *4 n.8 (quoting *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 190 (2d Cir. 2015)).

[4] Dr. Kamdem-Ouaffo joined ScentSational only with respect to his correction of inventorship claim. The district court did not reach the issue of whether ScentSa-

The district court dismissed the Second Amended Complaint with prejudice. Dr. Kamdem-Ouaffo appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

### I

We review *de novo* the district court's dismissal of a complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and review *de novo* the district court's dismissal of a complaint for lack of standing. *Rothstein v. UBS AG*, 708 F.3d 82, 90 (2d Cir. 2013).

### II

This case involves essentially three sets of causes of action: (1) unenforceable contract, unjust enrichment, and constructive trust; (2) correction of inventorship under 35 U.S.C. § 256; and (3) defamation. We first address Dr. Kamdem-Ouaffo's claims of unenforceable contract, unjust enrichment, and constructive trust. "[W]e may affirm the judgment of the district court on any ground that finds a basis in the record . . . ." *Rothstein*, 708 F.3d at 94.

The district court found that Dr. Kamdem-Ouaffo's "bare allegations of lack of mutual assent, failure to disclose material facts to . . . Plaintiff, and ambiguity, . . . are no more than naked assertions devoid of further factual enhancement," and held that Dr. Kamdem-Ouaffo failed to establish any right to relief for an unenforceable contract. *Kamdem-Ouaffo*, 2016 WL 369684, at *8, 10 (internal quotation marks, alterations, and citations omitted). First, the district court rejected Dr. Kamdem-Ouaffo's allegation of lack of mutual assent on the basis that "he was never given the opportunity to review the

tional was properly joined since it resolved the correction of inventorship claim on other grounds.

entire Agreement," *id.* at *8 (internal quotation marks and citation omitted), because under New York law, "[a] party's failure to read or understand a contract that it signs does not relieve it of its obligation to be bound by the contract," *id.* (quoting *In re Lehman Brothers Inc.*, 478 B.R. 570, 587 n.19 (S.D.N.Y. 2012), *aff'd sub nom. In re Lehman Bros. Holdings Inc.*, 761 F.3d 303 (2d Cir. 2014)). Second, the district court rejected Dr. Kamdem-Ouaffo's argument that the contract should be voided or found unenforceable based on an alleged breach of the implied covenant of good faith and fair dealing by PepsiCo because under New York law, "only parties to a contract can be held liable for breach of the implied covenant of good faith and fair dealing." *Id.* at *9 (citing, e.g., *Am.–European Art Assocs., Inc. v. Trend Galleries, Inc.*, 227 A.D.2d 170, 171 (N.Y. App. Div. 1996)). Third, the district court rejected Dr. Kamdem-Ouaffo's claim that there was no definiteness as to his consideration because it found that the $82,142 that he received was the consideration promised in Attachment B. *Id.* at *9. Finally, the district court rejected Dr. Kamdem-Ouaffo's charge that PepsiCo committed fraud because his complaint failed to meet the heightened pleading standard for fraud claims. *Id.* at *10. We discern no error in the district court's dismissal of the unenforceable contract claim on these grounds.

We also affirm the district court's dismissal of Dr. Kamdem-Ouaffo's unjust enrichment claim. "An unjust enrichment claim is rooted in the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another. Thus, in order to adequately plead such a claim, the plaintiff must allege that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Georgia Malone & Co. v. Rieder*, 973 N.E.2d 743, 746 (N.Y. 2012) (internal quotation marks and citations omitted). Dr. Kamdem-Ouaffo alleges in his Second Amended Complaint that "[PepsiCo] ha[s] been unjustly

enriched at the detriment of the Plaintiff" because Pepsi-Co "claimed and patented the Plaintiff's inventions worldwide for [its] own benefit" even though Attachment B was "invalid and/or unenforceable," PepsiCo never reimbursed him for commute-related expenses, and never offered him any relocation or alternative living arrangement closer to PepsiCo's facilities. App. tab. 14 at ¶¶ 245–47, 249, 251. Dr. Kamdem-Ouaffo failed to plead a viable claim of unjust enrichment against PepsiCo. And because "a claim of constructive trust under New York law requires [p]laintiffs to show unjust enrichment," *In re Lehman Bros. Holdings Inc.*, 541 B.R. at 581, we also affirm the district court's dismissal of Dr. Kamdem-Ouaffo's constructive trust claim.

## III

We next address Dr. Kamdem-Ouaffo's correction of inventorship claims. First, the district court did not err in holding that "Plaintiff cannot bring a correction of inventorship claim for *any* of the referenced patent applications." *Kamdem-Ouaffo*, 2016 WL 369684, at *11. We have held "that § 116 does not provide a private right of action to challenge inventorship of a pending patent application. Once a patent issues, however, 35 U.S.C. § 256 provides a private right of action to challenge inventorship." *HIF Bio, Inc. v. Yung Shin Pharm. Indus. Co.*, 600 F.3d 1347, 1354 (Fed. Cir. 2010).[5]

The district court also held that "Plaintiff lacks standing to make [] a claim [challenging inventorship of the issued '637 patent] because, pursuant to [Attachment B], he assigned his patent rights to PepsiCo. . . . Further-

---

[5]    To the extent Dr. Kamdem-Ouaffo seeks correction of inventorship of international patents or patent applications, the district court lacks jurisdiction to entertain those claims. *See, e.g.*, *Voda v. Cordis Corp.*, 476 F.3d 887, 900 (Fed. Cir. 2007).

more, Plaintiff's conclusory allegations of 'damages in terms of the loss of the ownership, inventorship, recognition, and the honor for his valuable, marketable, confidential, patentable and now patented intellectual property' do not suffice, . . . as [Attachment B] unmistakably leaves Plaintiff with none of the requisite interests for standing." *Kamdem-Ouaffo*, 2016 WL 369684, at *12 (quoting the Second Amended Complaint). To the extent that the district court relied on the proposition that a "plaintiff lack[s] standing to pursue a patent infringement claim where he [has] assigned away all his patent rights and thus [does] not have an ownership interest in the patents," *id.* (citing *Jim Arnold Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1572 (Fed. Cir. 1997)), that holding was mistaken.

As Dr. Kamdem-Ouaffo points out, we have held that "concrete and particularized *reputational* injury can give rise to Article III standing. . . . For example, if the claimed inventor can show that being named as an inventor on a patent would affect his employment, the alleged reputational injury likely has an economic component sufficient to demonstrate Article III standing." *Shukh v. Seagate Tech., LLC*, 803 F.3d 659, 663 (Fed. Cir. 2015) (emphasis added), *cert. denied*, No. 15-1285, 2016 WL 1558902 (U.S. June 27, 2016). That is, concrete and particularized reputational injury can support Article III standing for a § 256 claim even where an employee has assigned all of his interest in an invention and cannot pursue an infringement action. *See Shukh*, 803 F.3d at 661. But reputational injury alone is not sufficient; rather, it must be tied to economic consequences, such as loss of employment prospects. *Id.* at 663 ("Dr. Shukh presented evidence from which a trier of fact could conclude that these reputational harms had economic consequences—namely, that [he] was unable to find employment after he was terminated from Seagate."); *id.* at 667 ("Dr. Shukh's inability to obtain employment is a concrete and particularized

financial harm that suffices to create Article III standing.").

We affirm the district court's holding that Dr. Kamdem-Ouaffo lacked standing for his correction of inventorship claim because Dr. Kamdem-Ouaffo's sole claim of injury, in his Second Amended Complaint, stemming from his alleged loss of inventorship, was a bare assertion that "Plaintiff sustains and/or *might sustain* damages in terms of the loss of the ownership, inventorship, recognition, and the honor for his . . . Intellectual Property." App. tab. 15 at ¶ 304 (emphasis added). An allegation that one "sustains and/or might sustain" injury, including reputational injury, is not "concrete and particularized," but rather "conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "Where, as here, a case is at the pleading stage, the plaintiff must 'clearly . . . allege facts demonstrating' each element [of standing]." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citation omitted). Dr. Kamdem-Ouaffo did not clearly allege facts demonstrating actual harm to his reputation and that his alleged reputational harm had an economic component such as loss of employment.[6] *See Shukh*, 803 F.3d at 666–67.

IV

Third, we address Dr. Kamdem-Ouaffo's defamation claim. The district court found that "[a]ccording to Plaintiff, '[t]he said written defamatory statements were made [by PepsiCo Defendants] to the United States government in a document dated 12/18/2009.'" *Kamdem-Ouaffo*, 2016 WL 369684, at *12. The New York statute of limitations provides that an action for defamation be commenced

---

[6]    To be sure, Dr. Kamdem-Ouaffo argues he suffered economic harm from his termination, but these allegations are distinct from economic damage from not being listed as an inventor on the patent.

within one year. N.Y. C.P.L.R. § 215(3). New York follows "the single publication rule, which states that a cause of action for defamation accrues on the date the offending material is first published." *Nussenzweig v. diCorcia*, 878 N.E.2d 589, 590 (N.Y. 2007). Thus, the district court did not err in holding that Dr. Kamdem-Ouaffo's defamation claim is time-barred. We do not reach the district court's conclusion that the defamation action fails to state a claim.

V

Finally, Dr. Kamdem-Ouaffo raises several new arguments for the first time on appeal. *See, e.g.*, Appellant's Br. at 15 (arguing that the fees paid to Subex "criminally exceeded statutory limits for Employment Agency Fees); *id.* at 18 (arguing that "there remains a question as to whether Subex . . . was a lawful New York entity through which PepsiCo may assert and enforce itself as sole assignee and owner of Plaintiff-Appellant's patented Intellectual Property . . . ."). We decline to address Dr. Kamdem-Ouaffo's arguments made for the first time on appeal. *Gant v. United States*, 417 F.3d 1328, 1332 (Fed. Cir. 2005) ("Arguments not made in the court or tribunal whose order is under review are normally considered waived.").

**AFFIRMED**

COSTS

No costs.