**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2231
_____

RICKY KAMDEM-OUAFFO,
                                                          Appellant

v.

LIAM HUCZKO, Police Officer Hucarro ID #1778;
DANIEL DOLAN, Police Officer ID #3030;
PORT AUTHORITY OF NEW YORK AND NEW JERSEY (PANYNJ);
MUNICIPALITY OF NEWARK, a/k/a "City of Newark";
MUNICIPALITY OF ELIZABETH, a/k/a "City of Elizabeth";
POLICE OFFICER JOHN DOE, Officer ID unknown;
POLICE OFFICER JANE DOE, Officer ID unknown;
A PANYNJ'S AIRPORT TAXI MONITOR, female black on duty at Terminal B Level 2;
A PAPD POLICE OFFICER, Badge # unknown female white on duty at EWR Terminal C;
THE PORT AUTHORITY POLICE DEPARTMENT (PAPD);
LIONEL LEACH, JR., individual capacity and/or in capacity with the CWA;
COMMUNICATION WORKERS OF AMERICA, CWA;
OFFICER BRADLEY, PAPD Officer Badge #3027
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:16-cv-08859)
District Judge: Honorable Claire C. Cecchi
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on April 7, 2020

Before: JORDAN, BIBAS, and PHIPPS, <u>Circuit Judges</u>

(Opinion filed:  April 22, 2020 )

———————

OPINION[*]

———————

PER CURIAM

Appellant Ricky Kamdem-Ouaffo alleged in an amended complaint that on two occasions in 2016, Port Authority of New York and New Jersey (Port Authority) police issued him traffic citations for working as an Uber driver on the grounds of Newark Liberty International Airport in Newark, New Jersey. Kamdem-Ouaffo also alleged separate incidents with Port Authority police, who he claimed told him that Uber drivers were personae non grata at the airport and also threatened to cite him the next time he was seen picking up travelers. Kamdem-Ouaffo claimed that the actions of the police deprived him of his federal and state constitutional rights, were tortious under state law, and were motivated by a conspiratorial alliance among Newark, neighboring city Elizabeth, local taxicab and limousine operators, and a particular trade union (collectively, Defendants), all of which harbored antipathy to ride-sharing technology companies and affiliated drivers.

The foregoing three-sentence summary of Kamdem-Ouaffo's case is not easily discerned from the amended complaint, which contained almost 2,500 numbered paragraphs and incorporated hundreds of pages of exhibits. An astounding number of paragraphs replicated material found elsewhere in the filing. And an equal number reflected material plainly vulnerable to the remedial strike of Federal Rule of Civil Procedure 12(f), including

———————

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

2

countless facially inaccurate references to Uber as Kamdem-Ouaffo's business partner; unnecessary exposition about service of legal process; impertinent analyses of case law; irreverent musings about Uber's business model, profitability, and public interest in self-driving cars; and critiques of New Jersey's roads. See id. ("The court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter.").

Some Defendants moved to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim; others moved to dismiss it for lack of compliance with the pleading requirements of Rule 8(a)(2). Recognizing Kamdem-Ouaffo's pro se status, the District Court did not harshly punish him for prolixity; it sua sponte dismissed the amended complaint without prejudice under Rule 8(a)(2). The District Court provided thirty days for Kamdem-Ouaffo to file a revised, Rule 8-compliant pleading, and warned him that failure to adhere to its order could result in dismissal.

Kamdem-Ouaffo then filed a second amended complaint. Leading with an inauspicious seven-page table of contents, the second amended complaint spanned over 800 numbered paragraphs and, while it excised the exhibits and a good bit of the redundancy, still suffered from many of the same core deficiencies as its predecessor. Defendants responded with dispositive motions. The District Court responded with an Order to Show Cause why the second amended complaint should not be dismissed with prejudice for (again) failing to comply with Rule 8(a)(2).

Kamdem-Ouaffo's show-cause response was defiant. He defended his exposition about Uber's intellectual-property portfolio and other aspects of its business as proper background material for a jury deciding whether Port Authority police had acted

3

unconstitutionally or tortiously in issuing or threatening traffic citations, stating that "[i]f the Court cannot see this basic common sense, then honestly there is no point to waste my time or anybody's time here." D.C. Dkt. No. 102, at 3–4 (emphasis omitted). Kamdem-Ouaffo also contended that his pleading could not be shortened to fewer than 100 pages and that, even if his second amended complaint were dismissed without prejudice, no further amendment would be forthcoming and he would simply appeal. And that is exactly what he did after the District Court entered an order dismissing the second amended complaint without prejudice and allowing the filing of a third amended complaint that complied with Rule 8(a)(2).

We have jurisdiction under 28 U.S.C. § 1291. See Weber v. McGrogan, 939 F.3d 232, 240 (3d Cir. 2019) (explaining that "a clear and unequivocal intent to decline amendment and immediately appeal that leaves no doubt or ambiguity can allow us to exercise jurisdiction" over an order dismissing an action without prejudice); see also Frederico v. Home Depot, 507 F.3d 188, 192 (3d Cir. 2007). We review for abuse of discretion. See In re Westinghouse Sec. Litig., 90 F.3d 696, 702 (3d Cir. 1996).

As noted above, Rule 8 requires a "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The statement should be plain because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988). And "[t]he statement should be short because '[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material

4

from a mass of verbiage.'" Id. (second alteration in original) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1281, at 365 (1969)).

Whether the "short and plain statement" requirement is satisfied is a "context-dependent exercise." W. Penn Allegheny Health Sys., Inc. v. UPMC, 627 F.3d 85, 98 (3d Cir. 2010). A complaint may permissibly be dismissed based on Rule 8 noncompliance. Salahuddin, 861 F.2d at 42. Importantly, "the question before us is not whether we might have chosen a more lenient course than dismissal . . . , but rather whether the District Court abused its discretion in ordering the dismissal." Garrett v. Wexford Health, 938 F.3d 69, 92 (3d Cir. 2019), petition for cert. filed, No. 19-867 (U.S. Jan. 8, 2020).

With those principles in mind, we turn to Kamdem-Ouaffo's arguments on appeal. He first argues, without any support in law, that it is incumbent on the court and not the pleader to reform a complaint determined to be out of step with Rule 8(a)(2). See, e.g., Appellant's Br. 21 ("Plaintiff had no obligation to try to please an arbitrary demand [of] the government."). He next argues that the District Court failed to analyze the Poulis factors prior to dismissing the second amended complaint. Appellant's Br. 21–24; see Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868–70 (3d Cir. 1984).[1] Kamdem-Ouaffo also makes

---

[1] Under Poulis, "[a] district court should consider six factors when determining whether to dismiss a case under Rule 41(b)," including bad faith by the pleader and prejudice to the opposing party. Hildebrand v. Allegheny County, 923 F.3d 128, 132 (3d Cir. 2019) (citing Poulis, 747 F.2d at 868); see Fed. R. Civ. P. 41(b). The District Court had no occasion to consider the Poulis factors in this case; rather than sanction Kamdem-Ouaffo with dismissal, it invited the filing of a third amended complaint. In any event, in the unusual case where a party has willfully engaged in "contumacious" conduct, courts may dismiss a case without analyzing the Poulis factors. Guyer v. Beard, 907 F.2d 1424, 1429–30 (3d Cir. 1990).

arguments concerning corroborative evidence, unrelated litigation involving Uber, fear of political embarrassment as the motivation for the District Court's ruling, and the District Court's purported retaliation against Kamdem-Ouaffo for filing a recusal motion.[2] Because none of those arguments is sound or germane to the dispositive issue on appeal, we reject them without further discussion.

Ultimately, after careful review of the record, we conclude that the District Court did not abuse its discretion. Its judgment will be affirmed.

The District Court provided Kamdem-Ouaffo, an experienced pro se litigant,[3] with multiple opportunities to properly plead his case. Indeed, the District Court's order under review was a dismissal "without prejudice" to the filing of a third amended complaint, and it included specific instructions for reworking the pleading in a comprehensible manner. D.C. Dkt. No. 108 (emphasis omitted); cf. Ciralsky v. CIA, 355 F.3d 661, 671 (D.C. Cir. 2004) (holding that the district court did not abuse its discretion in dismissing the plaintiff's complaint under Rule 8(a)(2) where "there was nothing about that dismissal that would have

---

[2] It does not appear as though the District Court ruled on the recusal motion. Regardless, Kamdem-Ouaffo has never presented a colorable basis for recusal. See Liteky v. United States, 510 U.S. 540, 555 (1994); Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1356 (3d Cir. 1990). Also, to the extent his motion was rooted in 28 U.S.C. § 144, it was procedurally infirm for the reasons outlined by the Port Authority Appellees. See Br. for Defendants-Appellees Liam Huczsko et al. 17; see also United States v. Townsend, 478 F.2d 1072, 1073 (3d Cir. 1973).

[3] See, e.g., Kamdem-Ouaffo v. Idahoan Foods, LLC, 789 F. App'x 75 (9th Cir. 2020) (per curiam); Kamdem-Ouaffo v. Tapfin N. Am. Shared Servs., 788 F. App'x 401 (7th Cir. 2019) (per curiam); Kamdem-Ouaffo v. Task Mgmt. Inc., 792 F. App'x 218 (3d Cir. 2019) (per curiam); Kamden-Ouaffo v. NaturaSource Int'l, LLC, 693 F. App'x 172 (3d Cir. 2017) (per curiam); Kamdem-Ouaffo v. Leblon, 673 F. App'x 223 (3d Cir. 2016) (per curiam); Kamdem-Ouaffo v. PepsiCo Inc., 657 F. App'x 949 (Fed. Cir. 2016) (per curiam).

barred the plaintiff from correcting the complaint's defects," "[t]he amended complaint could certainly have stood further shortening," and such revision "would not have reduced [the plaintiff's] chances of success on the merits, as the evidentiary detail in the initial complaint was plainly not necessary for the case's survival"); Salahuddin, 861 F.2d at 42 (explaining that courts have "power to dismiss a prolix complaint without leave to amend" where such leave "has previously been given and the successive pleadings remain prolix and unintelligible"). That the District Court's efforts were met with unwavering unwillingness to comply with basic rules of procedure just means that we have adequate grounds to affirm the District Court's judgment, and we do so.